UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CASE LEROY,

                       Plaintiffs,

           – against –

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his capacity as
Superintendent of schools of Livingston Manor Central
School District,

                    Defendants.

-----------------------------------------------------------------X

Docket No: 21-cv-6008 (NSR) (AEK)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND TO STRIKE AFFIRMATIVE DEFENSES

SOKOLOFF STERN LLP
*Attorneys for Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No.: 210106

Of Counsel:
    Steven C. Stern
    Chelsea Weisbord

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ I

TABLE OF AUTHORITIES ......................................................................................... II

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ................................................................................................................. 3

I.   The Court Should Strike Those Portions of Plaintiff's Motion that Violate the
     Federal Rules ..................................................................................................... 3

II.  There is No Genuine Issue of Material Fact to Support Plaintiff's First Amendment
     Retaliation Claim .............................................................................................. 5

III. Plaintiff's State Law Claims Should Be Dismissed on Procedural and Substantive
     Grounds ........................................................................................................... 12

     A.   Plaintiff's Failure to Serve a Notice of Claim Strips this Court of Subject Matter
          Jurisdiction ............................................................................................... 12

     B.   Plaintiff's State Law Free Speech Claim Fails on the Merits ......................... 14

     C.   The Defamation Claim Still Fails on the Merits ........................................... 14

          i.  Plaintiff Cannot Establish the Elements of a Defamation Claim ............... 14

          ii. Superintendent Evans' Statements at the School Assembly Were Privileged....... 16

IV.  The Court Should Dismiss All Claims Against Superintendent John Evans As
     Duplicative of Plaintiff's Claims Against the School District............................ 19

V.   Plaintiff is not Entitled to an Injunction........................................................... 20

VI.  The Court Should Plaintiff's Punitive Damages Claim..................................... 21

VII. The Law of the Case Doctrine Does Not Apply to this Case.............................. 21

VIII. The Court Should Deny Plaintiff's Motion to Strike Defendants' Affirmative
      Defenses.......................................................................................................... 22

CONCLUSION............................................................................................................. 25

TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Albert v. Loksen,*
239 F.3d 256 (2d Cir. 2001) ................................................................................................ 14, 18

*Alharbi v. Miller,*
368 F. Supp. 3d 527 (E.D.N.Y. 2019) ......................................................................................... 21

*Allen v. Antal,*
665 Fed. Appx. 9 (2d Cir. 2016).................................................................................................. 13

*Alvarado v. Westchester Cnty.,*
22 F. Supp. 3d 208 (S.D.N.Y. 2014) ........................................................................................... 19

*Am. Home Energy Inc. v. AEC Yield Cap. LLC,*
2022 WL 595186 (E.D.N.Y. Feb. 28, 2022) ................................................................................ 24

*Andrews v. Freemantlemedia N.A., Inc.,*
2014 WL 6686590 (S.D.N.Y. Nov. 20, 2014).............................................................................. 22

*B.C. v. Mount Vernon Sch. Dist.,*
660 F. App'x 93 (2d Cir. 2016).................................................................................................... 20

*Baity v. Kralik,*
51 F.Supp.3d 414 (S.D.N.Y. 2014) .............................................................................................. 5

*Barmore v. Aidala,*
419 F. Supp. 2d 193 (N.D.N.Y. 2005)......................................................................................... 20

*Bethel School Dist. No. 403 v. Fraser,*
478 U.S. 675 (1986) ...................................................................................................................... 5

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.,*
111 F. Supp. 3d 459 (S.D.N.Y. 2015) ......................................................................................... 13

*Boice v. Unisys Corp.,*
50 F.3d 1145 (2d Cir.1995) .......................................................................................................... 16

*Bush v. Horn,*
2010 WL 1712024 (S.D.N.Y. Mar. 2, 2010)................................................................................ 19

*Cain v. Atelier Esthetique Inst. of Esthetics Inc.,*
733 F. App'x 8 (2d Cir. 2018)...................................................................................................... 15

*Cain v. Esthetique*,
   182 F. Supp. 3d 54 (S.D.N.Y. 2016) ........................................................ 15

*Castanza v. Town of Brookhaven*,
   700 F. Supp. 2d 277 (E.D.N.Y. 2010) ...................................................... 19

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) .................................................................... 15

*Chabot v. Cnty. of Rockland, New York*,
   2019 WL 3338319 (S.D.N.Y. July 25, 2019) ............................................ 12

*Chandok v. Klessig*,
   632 F.3d 803 (2d Cir. 2011) .................................................................... 16

*Cheadle on behalf of N.C. v. N. Platte R-1 Sch. Dist.*,
   555 F. Supp. 3d 726 (W.D. Mo. 2021) ..................................................... 11

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
   356 F.3d 197 (2d Cir. 2004) .................................................................... 11

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) ................................................................................ 10

*Clark v. McGee*,
   49 N.Y.2d 613 (1980) .............................................................................. 17

*Coach, Inc. v. Kmart Corps.*,
   756 F. Supp. 2d 421 (S.D.N.Y. 2010) ...................................................... 23

*Contes v. City of New York*, No. 99 Civ.,
   1999 WL 500140 (S.D.N.Y. 1999) ........................................................... 15

*Cook v. Colgate Univ.*,
   992 F.2d 17 (2d Cir. 1993) ...................................................................... 20

*Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*,
   677 F.3d 109 (2d Cir. 2012) ...................................................................... 6

*Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*,
   714 F. Supp. 2d 462 (S.D.N.Y. 2010) ........................................................ 6

*Cummings v. City of New York*,
   2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ............................................. 16

*Davis v. Shah*,
   821 F.3d 231 (2d Cir. 2016) ................................................................................. 20

*Daytree at Cortland Square, Inc. v. Walsh*,
   2022 WL 2345820 (2d Cir. June 29, 2022) .......................................................... 17

*DC v. Valley Cent. Sch. Dist.*,
   2013 WL 2181213 (S.D.N.Y. May 20, 2013) ......................................................... 7

*DeFabio v. E. Hampton Union Free Sch. Dist.*,
   658 F. Supp. 2d 461 (E.D.N.Y. 2009) ................................................................... 6

*Disabled in Action v. City of New York*,
   437 F. Supp. 3d 298 (S.D.N.Y. 2020) ................................................................... 3

*Doe #1 v. Syracuse Univ.*,
   468 F. Supp. 3d 489 (N.D.N.Y. 2020) ................................................................. 16

*Doninger v. Niehoff*,
   527 F.3d 41 (2d Cir.2008) ..................................................................................... 6

*Dunson v. Tri-Maintenance & Contractors, Inc.*,
   171 F.Supp.2d 103 (E.D.N.Y. 2001) ................................................................... 18

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
   2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014) ...................................................... 23

*Exch. Comm'n v. N. Am. Research & Dev. Corp.*,
   59 F.R.D. 111 (S.D.N.Y. 1972) ........................................................................... 21

*Fairstein v. Netflix, Inc.*,
   553 F. Supp. 3d 48 (S.D.N.Y. 2021) ................................................................... 14

*Faulkner v. Arista Records LLC*,
   797 F. Supp. 2d 299 (S.D.N.Y. 2011) ................................................................... 3

*Fernandez v. City of New York*,
   457 F. Supp. 3d 364 (S.D.N.Y. 2020) ................................................................. 14

*Figueroa v. RSquared NY, Inc.*,
   2015 WL 3936256 (E.D.N.Y. June 26, 2015) ........................................... 22, 23, 25

*Firth v. New York*,
   12 A.D.3d 907, 785 N.Y.S.2d 755 (2004) ........................................................... 17

*Fishman v. City of New Rochelle*,
2021 WL 4925518 (S.D.N.Y. Oct. 19, 2021) ................................................................. 13

*G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*,
915 F. Supp. 2d 268 (E.D.N.Y. 2012) .......................................................................... 13

*Gaston v. New York City Dep't of Health Off. of Chief Med. Exam'r*,
432 F. Supp. 2d 321 (S.D.N.Y. 2006) .......................................................................... 12

*Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*,
962 F.2d 268 (2d Cir. 1992)), *appeal dismissed* ...................................................... 21

*Haight v. NYU Langone Med. Ctr., Inc.*,
2016 WL 29628 (S.D.N.Y. Jan. 4, 2016) ....................................................................... 4

*Hazelwood Sch. Dist. v. Kuhlmeier*,
484 U.S. 260 (1988) ....................................................................................................... 7

*Heller v. Bedford Cent. Sch. Dist.*,
665 F. App'x 49 (2d Cir. 2016) ................................................................................... 11

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
2021 WL 535485, n.4 (S.D.N.Y. Feb. 12, 2021) .................................................... 21, 24

*House v. Wackenhut Servs., Inc.,*
2012 WL 4017334 (S.D.N.Y. 2012) ............................................................................ 22

*In re Kurtzman*,
194 F.3d 54 (2d Cir.1999) ........................................................................................... 21

*Ivani Contracting Corp. v. City of New York*,
103 F.3d 257 (2d Cir. 1997) ........................................................................................ 21

*J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*,
650 F.3d 915 (3d Cir. 2011) ........................................................................................ 10

*Kentucky v. Graham*,
473 U.S. 159 (1985) ..................................................................................................... 19

*Kochan v. Kowalski*,
478 F. Supp. 3d 440 (W.D.N.Y. 2020) ......................................................................... 24

*Kuczinski v. City of New York*,
352 F. Supp. 3d 314 (S.D.N.Y. 2019) ..................................................................... 17, 18

*Layshock ex rel. Layshock v. Hermitage Sch. Dist.*,
    650 F.3d 205 (3d Cir. 2011) ................................................................ 10

*Lewinter v. New York City Dep't of Educ.*,
    2010 WL 2746334 (S.D.N.Y. July 9, 2010) .................................... 12, 13

*Lombardo v. Stoke*,
    18 N.Y.2d 394 (1966) ........................................................................ 17

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*,
    141 S. Ct. 2038 (2021) ................................................................ 5, 7, 8, 9

*Marom v. Town of Greenburgh*,
    2020 WL 978514 (S.D.N.Y. Feb. 28, 2020) ....................................... 12

*Mirarotonda v. Gazzola*,
    172 F.3d 38 (2d Cir.1999) ................................................................. 13

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) .......................................................................... 24

*MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*,
    435 F. Supp. 2d 285 (S.D.N.Y. 2006) ................................................ 4

*Nadel v. Shinseki*,
    57 F.Supp.3d 288 (S.D.N.Y. 2014) .................................................... 3

*New York Youth Club v. Town of Harrison*,
    150 F. Supp. 3d 264 (S.D.N.Y. 2015) ............................................... 19

*Osias v. Dep't of Correction*,
    2022 WL 524225 (S.D.N.Y. Feb. 22, 2022) ...................................... 19

*Panzella v. County of Nassau*,
    2015 WL 5607750 (E.D.N.Y. 2015) .................................................. 21

*Perks v. Town of Huntington*,
    251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ............................................. 14

*Phelan v. Huntington Tri–Village Little League, Inc.*,
    57 A.D.3d 503 (2d Dep't 2008) ......................................................... 18

*Phillips v. Cnty. of Orange*,
    894 F. Supp. 2d 345 (S.D.N.Y. 2012) ............................................... 19

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*,

178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016)...................................................................... 14, 16

*Rekor Sys., Inc. v. Loughlin*,
    2022 WL 3020148 (S.D.N.Y. July 29, 2022)............................................................... 16

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir.1987) ........................................................................................ 22

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012) ........................................................................... 4

*Roach v. Morse*,
    440 F.3d 53 (2d Cir. 2006) ......................................................................................... 20

*Rockport Co. v. Deer Stags, Inc.*,
    65 F.Supp.2d 189 (S.D.N.Y.1999) ............................................................................... 3

*Rosenberg v. MetLife, Inc.*,
    493 F.3d 290 (2d Cir. 2007) ....................................................................................... 17

*Rutherford v. Fla. Union Free Sch. Dist.*,
    2019 WL 1437823 (S.D.N.Y. Mar. 29, 2019)............................................................ 20

*Salcer v. Envicon Equities Corp.*,
    744 F.2d 935 (2d Cir. 1984) ....................................................................................... 23

*Santavicca v. City of Yonkers*,
    132 A.D.2d 656 (2d Dep't 1987)................................................................................. 18

*Schell v. Dowling*,
    240 A.D.2d 721 (2d Dept. 1997) ................................................................................ 17

*Sheffield v. Roslyn Union Free Sch. Dist.*,
    2014 WL 4773993 (E.D.N.Y. Aug. 11, 2014) ...................................................... 16, 17

*Sheindlin v. Brady*,
    597 F. Supp. 3d 607 (S.D.N.Y. 2022) ......................................................................... 14

*Smeraldo v. City of Jamestown*,
    512 F. App'x 32 (2d Cir. 2013) .................................................................................... 4

*Spence v. State of Wash.*,
    418 U.S. 405 (1974) .................................................................................................... 11

*Sullivan v. Metro. Transit Auth. Police Dep't*,
    2017 WL 4326058 (S.D.N.Y. Sept. 13, 2017) ........................................................... 13

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,
  864 F.3d 236 (2d Cir. 2017) ................................................................................................ 15

*Tardif v. City of New York*,
  302 F.R.D. 31 (S.D.N.Y. 2014) ...................................................................................... 22, 23

*TC v. Valley Cent. Sch. Dist.*,
  777 F. Supp. 2d 577 (S.D.N.Y. 2011) .............................................................................Passim

*Texas v. Johnson*,
  491 U.S. 397 (1989) .......................................................................................................... 11

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
  2011 WL 4111504 (S.D.N.Y. 2011) ................................................................................... 3

*Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*,
  607 F.2d 1043 (2d Cir. 1979) ............................................................................................ 10

*Thorsen v. Sons of Norway*,
  996 F. Supp. 2d 143 (E.D.N.Y. 2014) ............................................................................... 18

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ........................................................................................................ 5, 6

*TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*,
  2015 WL 1499173 (S.D.N.Y. Mar. 25, 2015).................................................................... 4

*U.S. Small Bus. Admin.*,
  1997 WL 45514 (S.D.N.Y. 1997) ...................................................................................... 3

*United States v. Doonan*,
  2022 WL 954600, n.4 (S.D.N.Y. Mar. 30, 2022)............................................................. 21

*United States v. E. River Hous. Corp.*,
  90 F. Supp. 3d 118 (S.D.N.Y. 2015) ................................................................................. 23

*Wexler v. Allegion (UK) Ltd.*,
  2017 WL 946301 (S.D.N.Y. Mar. 9, 2017)....................................................................... 15

*Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist.*,
  494 F.3d 34 (2d Cir. 2007) .............................................................................................. 5, 6

*Wood v. Strickland*,
  420 U.S. 308 (1975) ........................................................................................................... 6

*Wyllie v. Dist. Atty. of Cnty. of Kings*,
　2 A.D.3d 714 (2d Dep't 2003) ...................................................................... 18

*Z.F.X. by Vankesteren v. Riverhead Cent. Sch. Dist.*,
　2021 WL 1238842 (E.D.N.Y. Apr. 2, 2021) .................................................. 20

*Zalewska v. Cnty. of Sullivan, New York*,
　316 F.3d 314 (2d Cir. 2003) ........................................................................ 12

*Zapata v. I.N.S.*,
　93 F. Supp. 2d 355 (S.D.N.Y. 2000) ............................................................ 20

**Statutes**

42 U.S.C. § 1983 ............................................................................................... 23

Article 1 Section 8 of the New York State Constitution ...................................... 13, 14

New York Education Law § 3813 ....................................................................... 12, 13

**Rules**

Fed. R. Civ. P. 12 ............................................................................................... 22

Fed. R. Civ. P. 56 ............................................................................................. 2, 3, 5

**PRELIMINARY STATEMENT**

There are no material facts in dispute. Plaintiff Case Leroy posted on social media a photo of him and a friend re-enacting the brutal murder of George Floyd: Plaintiff laid on the ground while his friend kneeled on his neck. He posted it on Snapchat above the caption, "**Cops got another.**" His friend posted it with the caption "**Another one down**" with the "**Black Lives Matter**" logo. They made these posts at 6:00 p.m. on April 19, 2021, while the jury was deliberating in the Derick Chauvin murder trial.

Unsurprisingly, the posts immediately went "viral." Within hours, the school administrators' and teachers' inboxes were flooded with emails that continued throughout the night, referring to the posts as "racist" and "disgusting," largely identified Plaintiff and the others by name, and demanded swift action. Community members took to social media to address the matter. Plaintiff received death threats.

The barrage of emails, phone calls, and text messages continued into the next day—the day of the Chauvin verdict—from concerned and angry students, parents, community members, and local organizations. The students involved were asked to remain home for their own safety. Police stood guard at the school. The Snapchat posts and blowback garnered media attention.

The disruption intensified as the following school day proceeded. It disrupted classroom instruction. Students planned a livestream protest. Staff demanded action. The administration was compelled to hold an impromptu assembly to address the matter, which was attended by all 7-12 grade students, teachers, staff, and administrators in the building. It was followed by a group counseling session and a sit-in vigil for George Floyd. The disruption caused by Plaintiff's actions continued throughout the school year.

No case that holds a school may not discipline a student for the type of racist conduct that

caused the level of disruption that happened here. This case is nothing like *Mahanoy*, where a school disciplined a cheerleader for swearing when she failed to make the cheer squad, without any anticipated or actual disruption to the learning environment. Plaintiff's despicable post set off a firestorm of concern, fear, and disruption that affected the students and staff within the school, during the school day and after hours.

For his state law claims, Plaintiff never served a Notice of Claim, which deprives the Court of subject matter jurisdiction. But even if he had, his state constitutional free speech claim must be dismissed as duplicative of the Section 1983 claim. His defamation claim fails because the alleged statements by Superintendent Evans are not defamatory, true, non-actionable opinion, and protected by the absolute and common interest privileges.

The Court should also dismiss the claims against Superintendent Evans, who was named only in his official capacity, as such claims are duplicative of the claims against the District. The Court should dismiss the punitive damages claim because an award of punitive damages cannot lie against a municipal entity. And his injunctive relief claims fail on the same merits as his damages claims. Plaintiff also lacks standing to enjoin the District from disciplining future students, which was mooted by his graduation.

The Court should strike the Declaration of Jerome Dorfman because it is not based on personal knowledge and contains impermissible legal conclusions, in violation of Fed. R. Civ. P. 56(c)(4). And it should strike the statement of facts in Plaintiff's memorandum of law, which includes no evidentiary citations and violates Rule 56 and Local Rule 56.1.

Finally, the Court should deny Plaintiff's motion to strike affirmative defenses on several procedural and substantive grounds: Plaintiff never sought leave from the Court; the motion is untimely; and Plaintiff cannot meet the demanding burden for such relief.

2

**STATEMENT OF FACTS**

Defendants respectfully refer the Court to *Defendants' Local Rule 56.1 Statement of Undisputed Material Facts* for the material facts relevant to this motion.

**ARGUMENT**

**I.    THE COURT SHOULD STRIKE THOSE PORTIONS OF PLAINTIFF'S MOTION THAT VIOLATE THE FEDERAL RULES**

A.    Portions of Mr. Dorfman's Declaration Violate Federal Rule Civil Procedure 56(c)(4)

Under Federal Rule of Civil Procedure 56(c)(4), an affidavit or declaration used to support or oppose a summary judgment motion must be made on personal knowledge, set out facts that would be admissible in evidence, and must show that the affiant or declarant is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(4); *Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 305 (S.D.N.Y. 2011). When an affidavit or declaration fails in these basic requirements a Court may strike it from the record. *See Rockport Co. v. Deer Stags, Inc.*, 65 F.Supp.2d 189, 191 (S.D.N.Y.1999). At the very least, a court should disregard the offending portions that do not comply with Fed. R. Civ. P. 56 and Local Rule 56.1. *See Disabled in Action v. City of New York*, 437 F. Supp. 3d 298, 309 (S.D.N.Y. 2020).

Statements in an attorney's declaration not based on personal knowledge have no evidentiary weight, *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 2011 WL 4111504, at *5 (S.D.N.Y. 2011), and the Court should strike them. *See Disabled in Action*, 437 F. Supp. at 309 (striking declaration paragraphs not based on personal knowledge). Also, the Court should disregard any portion of an affidavit stating "ultimate facts or legal conclusions." *See U.S. Small Bus. Admin.*, 1997 WL 45514, at *3 (S.D.N.Y. 1997); *Nadel v. Shinseki,* 57 F.Supp.3d 288, 293 n. 6 (S.D.N.Y. 2014). In fact, "conclusory allegations,

3

examination of thoughts, opinions, argument and legal conclusions are all prohibited from affidavits submitted in support of, or opposition to" a summary judgment motion. *TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*, 2015 WL 1499173, at *8 (S.D.N.Y. Mar. 25, 2015). The Court should also disregard any part of the declaration that "is more akin to an 'adversarial memorandum than a bona fide affidavit.'" *See Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013).

This Court should strike most, if not all, of Jerome Dorfman's declaration because it contains (1) assertions that are not (and cannot be) within Dorfman's personal knowledge, and (2) *ipse dixit* pronouncements and attorney argument unsupported by evidence. *See Haight v. NYU Langone Med. Ctr., Inc.*, 2016 WL 29628, at *5 (S.D.N.Y. Jan. 4, 2016) ("disregarding attorney declaration because it contained impermissible legal conclusions and factual assertions not based on personal knowledge"); *Risco v. McHugh*, 868 F. Supp. 2d 75, 88, n. 2 (S.D.N.Y. 2012) ("[U]nlike the usual attorney affirmations which merely attach copies of documents alleged to be relevant and admissible, and identifies those documents for the Court, Plaintiff's counsel submitted an affirmation which includes arguments and factual assertions. … The affirmation is patently improper in that he could not possibly have personal knowledge of the matters discussed.")

B.     <u>Plaintiff's Memorandum of Law Violates the Federal Rules and Local Rules</u>

Local Civil Rule 56.1 requires a party moving for summary judgment to submit a separate statement of numbered material facts "as to which the moving party contends there is no genuine issue to be tried." *MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 304 (S.D.N.Y. 2006) (quoting S.D. & E.D. N.Y. R. 56.1(a)), *aff'd on other grounds,* 235 F. App'x 827 (2d Cir. 2007). "The purpose of this rule, and counsel's compliance with the same, is to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and

admissible to that determination." *Baity v. Kralik*, 51 F.Supp.3d 414, 418 (S.D.N.Y. 2014). The statement of facts in Plaintiff's memorandum of law does not comply with this requirement and should accordingly be disregarded. It should also be disregarded because it violates both Fed. R. Civ. P. 56 and Local Civil Rule 56.1 by not citing to any evidence, admissible or otherwise, to support any of the purported facts. *See* S.D. & E.D. N.Y. R. 56.1(d) (Each statement of material fact by movant pursuant to Rule 56.1(a) "must be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(c).").

## II.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT TO SUPPORT PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

Although students maintain certain First Amendment rights in school, they "are not automatically coextensive with the rights of adults in other settings." *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). Rather, those rights must be applied "in light of the special characteristics of the school environment." *Mahanoy Area Sch. Dist. v. B. L. by & through Levy,* 141 S. Ct. 2038, 2044–45 (2021).

It is well-settled schools have a special interest in regulating speech that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Mahanoy,* 141 S. Ct. at 2045 (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 513 (1969)). Discipline for student speech must be caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. *See TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 591 (S.D.N.Y. 2011) (quoting *Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist.,* 494 F.3d 34, 38 (2d Cir. 2007)). However, school discipline is warranted for student conduct that: (1) would substantially interfere with the work of the school, (2) would cause material and substantial interference with schoolwork or discipline, (3) would materially and substantially disrupt the work and discipline of the school, or (4) might reasonably

have led school authorities to forecast substantial disruption of or material interference with school activities. *Id.* (citing *Tinker*, 393 U.S. at 508, 511, 513, 514); *see also Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 112–13 (2d Cir. 2012) (holding student speech may be curtailed if speech will "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school").

Courts recognize school administrators should be given leeway to address any potential disruption before it manifests itself, and "under *Tinker*, it is the objective reasonableness of the school administrators' response, rather than the student's private intentions, that are relevant." *Cuff*, 677 F.3d at 114. Under this standard, "defendants need not prove that school administrators' initially-stated justifications for punishment fully incorporate all the objective facts that could support a likelihood of substantial disruption, and they need not demonstrate that substantial disruption was inevitable." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 714 F. Supp. 2d 462, 468–69 (S.D.N.Y. 2010), *aff'd,* 677 F.3d 109 (2d Cir. 2012) (collecting cases); *see also Doninger v. Niehoff,* 527 F.3d 41, 51 (2d Cir.2008) ("The question [under *Tinker*] is not whether there has been actual disruption, but whether school officials 'might reasonably portend disruption' from the student expression at issue."); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 481 (E.D.N.Y. 2009) ("[R]ather than requiring certainty of disruption, *Tinker* allows school officials to act and prevent the speech where they might reasonably portent disruption from the student expression at issue."), *aff'd,* 623 F.3d 71 (2d Cir. 2010).

It is simply not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. *See Wisniewski,* 494 F.3d at 40 (quoting *Wood v. Strickland,* 420 U.S. 308, 326 (1975)); *see also DeFabio*, 658 F. Supp. 2d at 481 ("In assessing the reasonableness of the decision regarding potential disruption, courts must

keep in mind that school officials also are entitled to rely upon their expertise and experience in making these often difficult judgments in extraordinary circumstances.").

The Supreme Court has also held that a school need not tolerate student speech that is inconsistent with its basic educational mission, even though the government could not censor similar speech outside school. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 260 (1988); *DC v. Valley Cent. Sch. Dist.*, 2013 WL 2181213, at *4 (S.D.N.Y. May 20, 2013) (citations omitted); *TC*, 777 F. Supp. 2d at 591.

Contrary to Plaintiff's misguided assertions, the *Mahanoy* holding did not wipe out these fundamental principles of student speech, nor did it eliminate a school's ability to discipline off-campus speech that causes a material and substantial disruption to school operations. On the contrary, the Supreme Court simply clarified that the "standard" for showing a risk of "substantial disruption" requires "something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Mahanoy,* 141 S. Ct. at 2047-48.

While Plaintiff shakes his pom poms and shouts about the Supreme Court's holding in *Mahanoy*, the facts in that case are utterly distinguishable from the case before this Court. If anything, the rubric set forth in *Mahanoy* compels the conclusion that Plaintiff's discipline did not violate the First Amendment. In *Mahanoy*, a student was disciplined for posting a photo on Snapchat raising her middle finger with the caption, "Fuck school fuck softball fuck cheer fuck everything." *Id.* at 2042. The photos eventually reached the school principal and cheerleading coaches, who suspended plaintiff from the cheerleading squad because the posts used profanity in connection with a school extracurricular activity and therefore violated team and school rules. *Id.*

Although the Court held the school violated the First Amendment under that limited circumstance, it recognized a "school's regulatory interests remain significant in some off-campus

circumstances." *Id.* at 2045. The Court declined to set any bright-line rule and left it for "future cases to decide," as the specific facts merely provided "one example" of when a school cannot discipline for off-campus speech. *Id.* at 2045. The Court weighed the student's free speech rights there against the school's interest in teaching good manners and punishing the use of vulgar language, and decided the student's speech outweighed the school's regulatory interest. *Id.* at 2047-48. The Court's holding was decidedly premised on the absence of any evidence that the speech "caused substantial disruption of learning-related activities or the protection of those who make up a school community." *Id.*

This case lands squarely on the other side of that spectrum. Unlike *Mahanoy*—where the school had no evidence of disruption—here the disruption was so overwhelming and severe that it grinded the regular school day to a halt. As detailed in Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, Plaintiff's Snapchat post caused an uproar in the community and a substantial disruption to the learning environment. (*See gen.*, Def. 56.1, ¶¶ 27-114; *see also* Evans Aff., ¶¶ 3, 12, 41 Davis Aff., ¶ 14; Towsley Aff., ¶ 11.) District administrators were immediately and continually bombarded with emails and phone calls from concerned and angry students, parents, community members, neighboring school administrators (including the President of SUNY Sullivan), and local organizations, such as SARE (Students Against Racism in Education). (Def. 56.1, ¶¶ 36-92.) The physical threats to the students' safety compelled the District to ask them to remain home from school. (Def. 56.1, ¶¶ 93-94.) Students, teachers, and other staff were discussing the photos throughout the school day, interrupting classroom instruction. (Def. 56.1, ¶¶ 94-95.) Staff members approached the administration demanding to know how the District planned to respond to the unrest created by the Snapchat posts. (Def. 56.1, ¶ 97.) Students planned a protest for the middle of the school day, which they intended to livestream, prompting concern about

student safety. (Def. 56.1, ¶ 98.) The unrest in the school compelled the administration to halt all classes so it could hold an impromptu assembly to address the concerns about racism in the school, hold student counseling sessions, and supervise a sit-in vigil. (Def. 56.1, ¶¶ 99-106.) The matter raised such a safety concern for the school that law enforcement officers from the New York State Troopers and Sheriff's Department remained on school grounds throughout the day, prompted further inquiries form concerned parents. (Def. 56.1, ¶ 107.) The matter was so significant it garnered media attention, and reporters sought comment from the administration. (Def. 56.1, ¶¶ 109-112.)

Community members not only criticized the students involved (including Plaintiff); some criticized the District for ostensibly tolerating such racism and demanded swift action. (Def. 56.1, ¶ 45.) In addition to controlling the learning environment, addressing the safety, security, and emotional concerns in the school, it required Superintendent Evans to perform damage control with the community caused or exacerbated by Plaintiff's actions. (Def. 56.1, ¶ 56, 65, 67, 75, , 79, 81, 83, 86, 88, 90, 92, 108, 114.) The disruption persisted throughout the remainder of the year. (Towsley Aff., ¶ 11.)

The District's interests differ so materially from those in *Mahanoy* as no fair comparison may be made. *Id.* at 2047-48. The District was not punishing a student for swearing at a cheerleading squad: it had a substantial interest in promoting tolerance and respect, eliminating racism in its school, making its students, staff, and community feel secure that it will not tolerate racism, and maintaining the security and safety of the school. (Evans Aff., ¶ 41.) Even Justice Julian Schreibman—who granted Plaintiff's request to walk at graduation—recognized that "our public schools have an obligation to teach students antiracism, to be antiracist and to engage in antiracist conduct." (Pl. Ex. 2 at p. 4.)

Plaintiff largely cites cases where the defendants could not demonstrate "substantial disruption." In *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011), the holding was at least partially based on the defendant's failure to establish a nexus between plaintiff's speech and a substantial disruption to the school environment. *Id.* at 214. The court distinguished it from others that "involved off campus expressive conduct that resulted in a substantial disruption of the school, and [where] the courts allowed the schools to respond to the substantial disruption that the student's out of school conduct caused." *Id.* Similarly, in *Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*, 607 F.2d 1043, 1052 (2d Cir. 1979), "there was simply no threat or forecast of material and substantial disruption within the school" as evidenced by the fact that "school officials were content to do nothing at all for six full days, until called to action by the school board president." *Id.* at 1052, n.17. In *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011), the court found the plaintiff's speech "did not cause a substantial disruption in the school." *Id.* at 928. Unlike these cases, the evidence of disruption before this Court is glaring.

If *Mahanoy* falls at one end of the spectrum of protected off-campus speech, this case falls decidedly at the other end. Because Defendants did not violate plaintiff's First Amendment rights when it disciplined him for his disgusting, racist Snapchat post that substantially disrupted—in fact upended—the learning environment, Plaintiff's First Amendment claims fail as a matter of law.

To the extent Plaintiff alleges he did not intend to make any kind of statement about the George Floyd murder (or otherwise), he was not engaging in expressive activity protected by the First Amendment. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate

that the First Amendment even applies.") Plaintiff has the burden to demonstrate conduct "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974)). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, [the Supreme Court] has asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Id.* (cleaned up).

Plaintiff disavowed in his deposition that he had any intent to communicate a message through the photograph or his Snapchat post. He didn't take the photo. When asked why he deleted it, he said, "Because, at first, I didn't really like understand like what was behind the picture, and then when I understood, I deleted it because I didn't want any involvement in it." (Ex. C at p. 95.) When asked about his fellow student taking the photo and posting about it, Plaintiff said, "Honest, like he wanted to represent the George Floyd case, but I didn't understand that or like I didn't see that in the picture until later." (Ex. C at p. 96.) That's when he claims he deleted it. When asked why he wrote, "Cops got another" next to the photo, Plaintiff testified, "Just like cops got another person. Like there was like no meaning behind it. Just…" (Ex. C at p. 98.) He continued to explain that it simply reminded him of an arrest. (*Id.*) In so testifying, Plaintiff disavowed any intent to engage in expressive conduct through the photo or his post and, therefore, disavowed any protections under the First Amendment. *See Cheadle on behalf of N.C. v. N. Platte R-1 Sch. Dist.*, 555 F. Supp. 3d 726, 734 (W.D. Mo. 2021) (student's photo depicting her drinking alcohol not expressive conduct under First Amendment), appeal dismissed, 2021 WL 7186863 (8th Cir. Nov. 2, 2021); *see also Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 53 (2d Cir. 2016) (gun purchase not expressive conduct); *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d

197, 207 (2d Cir. 2004) (KKK masks not expressive conduct under First Amendment); *Zalewska v. Cnty. of Sullivan, New York*, 316 F.3d 314, 319 (2d Cir. 2003) ("Action attempting to communicate such a "vague and unfocused" message is afforded minimal if any First Amendment protection.").

## III.  PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED ON PROCEDURAL AND SUBSTANTIVE GROUNDS

### A.  Plaintiff's Failure to Serve a Notice of Claim Strips this Court of Subject Matter Jurisdiction

This Court should dismiss Plaintiff's defamation and state constitutional claim because he never served a notice of claim. Under New York Education Law § 3813, a notice of claim is a condition precedent to suing a school district, board of education, board of trustees, or school officer. *See Lewinter v. New York City Dep't of Educ.*, 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010) (quoting N.Y. Educ. Law § 3813(1)). A "school officer" includes a superintendent of schools. *See* N.Y. Educ. Law § 2(13). And pursuant to General Municipal Law § 50-e, a plaintiff must serve a notice of claim within 90 days after the claim arises. *See Marom v. Town of Greenburgh*, 2020 WL 978514, at *5 (S.D.N.Y. Feb. 28, 2020) (citing Gen. Mun. Law § 50-e(1)(a)).

These notice of claim requirements apply to defamation claims. *See Bey v. Westbury Union Free Sch. Dist.*, WL 900615, at *5 (E.D.N.Y. Mar. 28, 2022) (defamation claims subject to Education Law § 3813's notice of claim requirement); *Gaston v. New York City Dep't of Health Off. of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 326 (S.D.N.Y. 2006) (holding General Municipal Law's notice of claim requirement is a pre-requisite to maintaining defamation and libel claims against a municipal entity). They also apply to Plaintiff's free speech claim under the NYS constitution. *See Chabot v. Cnty. of Rockland, New York*, 2019 WL 3338319, at *9 (S.D.N.Y. July

25, 2019) (NYS constitutional claims are subject to the General Municipal Law's notice of claim requirement); *G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012) (holding Education Law § 3813's notice of claim requirement extends to state constitutional torts) (collecting cases).

Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction." *Fishman v. City of New Rochelle*, 2021 WL 4925518, at *10 (S.D.N.Y. Oct. 19, 2021) (collecting cases); *see also Lewinter v. New York City Dep't of Educ.*, 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010) (Compliance with Section 3813(1) is a prerequisite for a suit naming a school district or its officers, and a plaintiff's failure to plead compliance with New York's notice of claim requirements mandates dismissal.") (collecting cases).

B.  Plaintiff's State Law Free Speech Claim Fails on the Merits

Plaintiff's free speech claim under Article 1 Section 8 of the New York State Constitution is barred because "there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." *Sullivan v. Metro. Transit Auth. Police Dep't*, 2017 WL 4326058, at *10 (S.D.N.Y. Sept. 13, 2017) (collecting cases). Dismissal of state law claims is generally appropriate where state law provides no theory for additional damages. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 483 (S.D.N.Y. 2015) (quoting *Mirarotonda v. Gazzola,* 172 F.3d 38, 38 (2d Cir.1999)).

Since there is an available federal remedy, Plaintiff's First Amendment Section 1983 claim, his identical New York State constitutional claims must be dismissed. *See e.g., Allen v. Antal*, 665 Fed. Appx. 9 (2d Cir. 2016) (dismissing NYS constitutional claims because alternative remedies available under § 1983); *Sullivan*, 2017 WL 4326058, at *10 (dismissing free speech under NYS

13

Constitution because plaintiff had available remedy under Section 1983); *see also Fernandez v. City of New York*, 457 F. Supp. 3d 364, 399 (S.D.N.Y. 2020) (free speech retaliation under Article 1, Section 8 of the New York State Constitution governed by same principles as First Amendment).

### C. The Defamation Claim Still Fails on the Merits

Plaintiff's libel claim derives from Superintendent Evans' statements at a school assembly that: "a lot of people viewed [the photographs] as racist in nature"; "it had no place in our school"; "it was being addressed and being investigated"; and "racism cannot and will not be tolerated." (Pl. Memo. at p. 17.) These statements are not defamatory; but if they were, they are absolutely and qualifiedly privileged.

### i.    Plaintiff Cannot Establish the Elements of a Defamation Claim

The elements of a cause of action for defamation are (1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) "of and concerning" the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege. *See TC*, 777 F. Supp. 2d at 603 (citing *Albert v. Loksen,* 239 F.3d 256, 265–66 (2d Cir. 2001)). A "defamatory" statement is one which "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Id.* To be actionable, a defamatory statement must express an assertion of fact rather than one of opinion and that expressions of opinion, "no matter how offensive, cannot be the subject of an action or defamation." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 633 (S.D.N.Y. 2022) (citing *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 158 (S.D.N.Y. 2016).

Truth is an absolute defense to defamation. *See Fairstein v. Netflix, Inc.,* 553 F. Supp. 3d

48, 65 (S.D.N.Y. 2021). "Substantial truth" will defeat a libel claim. *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1169 (E.D.N.Y. 2003); *see also Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017)

For damages, the alleged harm "must consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation. *See Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8, 11 (2d Cir. 2018) (quoting *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000)). Defamation per se absolves a plaintiff of the requirement to plead special damages, because the law presumes that damages will result. *Id.* (collecting cases). This presumption of damages only applies to limited categories of statements, including statements that tend to infer a plaintiff's trade, business, or profession. *Id.* This presumption of damages generally does not extend to students. *Id.*; *see also Cain v. Esthetique*, 182 F. Supp. 3d 54, 73 (S.D.N.Y. 2016) (extending presumption of damages to students "makes little sense"), *aff'd sub nom. Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8 (2d Cir. 2018).

Initially, Superintendent Evans' statements at the school assembly were true. (Def. 56.1, ¶¶ 36-92, 108, 115; see also Def. 56.1, ¶¶ 36-92.) Plaintiff even admits the statements "standing alone" did "not constitute slander against plaintiff." (Pl. Mem. at p. 17.) Plaintiff instead claims that when Superintendent Evans suspended him he "placed the imprimatur of defendant behind the view that his photograph was racist" and that this "non-verbal conduct completed the slander." (Pl. Mem. at p. 18.) Plaintiff offers no case law to support this strange legal theory, and there is none because non-verbal conduct cannot constitute a defamatory statement as a matter of law. *See Wexler v. Allegion (UK) Ltd.*, 2017 WL 946301, at *4 (S.D.N.Y. Mar. 9, 2017). This includes school suspensions. *See Contes v. City of New York*, No. 99 Civ. 1597 (SAS), 1999 WL 500140,

at *9 (S.D.N.Y. 1999) (dismissing defamation claim based on defendant's suspension of plaintiff because "slander requires the making of an oral or written defamatory statement"); *TC*, 777 F. Supp. 2d at 603 (same).

In his papers, Plaintiff equates characterizing a photograph as racist to calling a person racist. (Pl. Mem. at p. 18.) But the alleged defamatory statement was simply that a lot people viewed the photograph as racist (and it was). Superintendent Evans never called Plaintiff a racist. Even if he had, that still would not give rise to a defamation claim because New York courts have consistently held that terms like "racist" constitute nonactionable opinion. *See e.g., Cummings v. City of New York*, 2020 WL 882335, at *20-21 (S.D.N.Y. Feb. 24, 2020) (collecting cases); *Doe #1 v. Syracuse Univ.,* 468 F. Supp. 3d 489, 510 (N.D.N.Y. 2020); *Ratajack*, 178 F. Supp. 3d at 165. And Plaintiff does not even allege, much less prove, any special damages.

### ii. Superintendent Evans' Statements at the School Assembly Were Privileged

Even if Superintendent Evans' statements at the assembly were defamatory, Plaintiff's libel claims still must be dismissed because the statements were privileged. "New York has long recognized that for public policy reasons, certain types of statements and communications, though defamatory, are privileged and may not serve as the basis for a claim of defamation." *Sheffield v. Roslyn Union Free Sch. Dist.*, 2014 WL 4773993, at *11 (E.D.N.Y. Aug. 11, 2014) (citing *Boice v. Unisys Corp.,* 50 F.3d 1145, 1149 (2d Cir.1995)); *see also Rekor Sys., Inc. v. Loughlin*, 2022 WL 3020148, at *13 (S.D.N.Y. July 29, 2022) (holding New York public policy mandates certain communications, even if defamatory, cannot serve as the basis for imposition of liability in a defamation action) (quoting *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011))*.*

New York law recognizes two types of privileges: absolute and qualified. *Sheffield* 2014 WL 4773993, at *11. A party afforded absolute immunity "may not be sued 'no matter how

16

malicious his state of mind.'" *Id.* A party afforded qualified immunity, on the other hand, "may be sued for defamation only if he published the statement with malice." *Id.* Whether a party is entitled to absolute immunity for alleged defamatory statements is a question of law for the court. *Id.*

The Superintendent's remarks during the school assembly was absolutely privileged under the executive privilege, which applies to statements made by executive officials who make statements "in the discharge of their responsibilities about matters within the ambit of their duties." *Daytree at Cortland Square, Inc. v. Walsh*, 2022 WL 2345820, at *2 (2d Cir. June 29, 2022) (citing *Clark v. McGee*, 49 N.Y.2d 613, 617 (1980)). It is afforded to "an official who is a principal executive of State or local government or is entrusted by law with administrative or executive policy-making responsibilities of considerable dimension." *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 325 (S.D.N.Y. 2019) (quoting *Firth v. New York*, 12 A.D.3d 907, 785 N.Y.S.2d 755, 756 (2004)). It extends to those of "subordinate rank who exercise delegated powers." *Id.* It shields such a speaker, or writer, "from liability for an otherwise defamatory statement, regardless of the speaker or writer's motive in making the statement." *Rosenberg v. MetLife, Inc.*, 493 F.3d 290, 291 (2d Cir. 2007).

The absolute privilege applies when a high public official (as here) makes statements—as part of his public obligations—in response to "a direct attack upon the integrity of a governmental unit [that] might impel a public response by the head or governing body of that entity." *Clark v. McGee*, 49 N.Y.2d 613, 620 (1980) (citing *Lombardo v. Stoke*, 18 N.Y.2d 394, 401 (1966) (absolute privilege afforded to public college president who impugned individuals who had complained about discrimination at Queens College); *see also Schell v. Dowling*, 240 A.D.2d 721, 722 (2d Dept. 1997) (county official entitled to absolute immunity for statements made to press regarding plaintiff's handling of tuberculosis incident).

Superintendent Evans' remarks fall squarely within this privilege. As the chief executive officer of the school district, he was required not only to make these statements within the scope of his public obligations, but as a direct response to the public outcry about Plaintiff's social media post. He needed to assure everyone the District was taking the matter seriously and they would not tolerate racism in the school. He did so in response to the community's demand for action and criticism of the District for purportedly allowing racism to percolate within its study body. His speech was also necessary to quell the potential disruption in the school, for the safety and security of students and staff.

Plaintiff's defamation claim is also barred by the common-interest privilege, which arises when a person makes a bona fide communication upon a subject in which he and the recipient both have an interest. *See Kuczinski*, 352 F. Supp. 3d at 325. This privilege applies to public statements by government officials. *See e.g. Wyllie v. Dist. Atty. of Cnty. of Kings*, 2 A.D.3d 714, 719 (2d Dep't 2003); *Santavicca v. City of Yonkers*, 132 A.D.2d 656, 657 (2d Dep't 1987) (superintendent's statements about disciplining staff following death of high school football player protected by qualified privilege given interest in providing public with information regarding steps taken to prevent similar future tragedy). A plaintiff can only defeat a qualified privilege by proving actual malice. *See Dunson v. Tri-Maintenance & Contractors, Inc.*, 171 F.Supp.2d 103, 117 (E.D.N.Y. 2001) (citing *Albert v. Loksen*, 239 F.3d 256, 273 (2d Cir. 2001)). "Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173 (E.D.N.Y. 2014) (quoting *Phelan v. Huntington Tri–Village Little League, Inc.,* 57 A.D.3d 503, 504–505 (2d Dep't 2008)).

Superintendent Evans held an assembly to address student and staff concerns about racism

in the District, and student safety in the wake of the incident. It was a bona fide communication for which he, the students, and the staff shared a legitimate, common interest.

## IV. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST SUPERINTENDENT JOHN EVANS AS DUPLICATIVE OF PLAINTIFF'S CLAIMS AGAINST THE SCHOOL DISTRICT

Plaintiff named Superintendent John Evans in his official capacity only. (Ex. A at p. 1.) Such official capacity claims are duplicative of the claims against the District and, therefore, must be dismissed as a matter of law.

It is well-settled that claims against individual defendants in their official capacities are really just claims against the municipality and, thus, are redundant when the municipality is also named as a defendant. *See New York Youth Club v. Town of Harrison*, 150 F. Supp. 3d 264, 275 (S.D.N.Y. 2015) (collecting cases). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Bush v. Horn*, 2010 WL 1712024, at *7 (S.D.N.Y. Mar. 2, 2010) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

"Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Osias v. Dep't of Correction*, 2022 WL 524225, at *2 (S.D.N.Y. Feb. 22, 2022) (quoting *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 284 (E.D.N.Y. 2010)); *Alvarado v. Westchester Cnty.,* 22 F. Supp. 3d 208, 213 (S.D.N.Y. 2014); *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 385 (S.D.N.Y. 2012) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.") (collecting cases).

19

This principle applies in the public school context, specifically to dismiss official-capacity claims against school administrators such as Superintendent Evans. *See e.g. Z.F.X. by Vankesteren v. Riverhead Cent. Sch. Dist.*, 2021 WL 1238842, at *5 (E.D.N.Y. Apr. 2, 2021) (dismissing official capacity § 1983 claims against individual school defendants as redundant of § 1983 claims against school district); *Rutherford v. Fla. Union Free Sch. Dist.,* 2019 WL 1437823, at *41 (S.D.N.Y. Mar. 29, 2019); *Barmore v. Aidala*, 419 F. Supp. 2d 193, 202 (N.D.N.Y. 2005) (official capacity claims against school board president was "unnecessarily redundant and must be dismissed" because the school district was already named as a defendant in the case).[1]

## V.    PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION

To obtain a permanent injunction, a plaintiff must both succeed on the merits and demonstrate the absence of an adequate remedy at law and irreparable harm if the relief is not granted. *See Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016) (quoting *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006)). Plaintiff is not entitled to a permanent injunction because he cannot succeed on the merits, for the reasons set forth above. Further, Plaintiff has no standing to enjoin the District from disciplining future students, which is mooted by his graduation. *See B.C. v. Mount Vernon Sch. Dist.*, 660 F. App'x 93, 96 (2d Cir. 2016). This is because "after graduation if becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Id.; see also Cook v. Colgate Univ.*, 992 F.2d 17, 20 (2d Cir. 1993) (once student graduates, he may not "litigate the claims of students unnamed and unrepresented in this action."). This Court does not have subject matter jurisdiction over this moot claim. *See Zapata v. I.N.S.*, 93

---

[1] Even if Plaintiff had sued Superintendent Evans in his personal capacity, the First Amendment retaliation claim against him would still fail on qualified immunity grounds. Even if *Mahanoy* applied, as Plaintiff argues, the Supreme Court did not issue that decision until June of 2021—after Superintendent Evans issued his disciplinary decision and the Board of Education upheld it. (Def. 56.1, ¶¶ 152-154.)

F. Supp. 2d 355, 358 (S.D.N.Y. 2000) ("Federal district courts do not have subject matter jurisdiction over moot cases.") (citing *In re Kurtzman,* 194 F.3d 54, 58 (2d Cir.1999)).

## VI.    THE COURT SHOULD PLAINTIFF'S PUNITIVE DAMAGES CLAIM

Plaintiff cannot recover punitive damages from the District or municipal employees sued in their official capacity. *See Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997); *Panzella v. County of Nassau*, 2015 WL 5607750, *12 (E.D.N.Y. 2015). Accordingly, this Court should dismiss Plaintiff's punitive damages claim.

## VII.    THE LAW OF THE CASE DOCTRINE DOES NOT APPLY TO THIS CASE

Plaintiff's reliance on the "law of the case" doctrine is misplaced. It is black letter law that "[a] district court's decision in to grant a temporary or preliminary injunction does not constitute the law of the case and will not estop the parties nor the court as to the merits of the law." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 556 (E.D.N.Y. 2019) (quoting *Sec. & Exch. Comm'n v. N. Am. Research & Dev. Corp.*, 59 F.R.D. 111, 113 (S.D.N.Y. 1972)), *aff'd in part, dismissed in part*, 829 F. App'x 570 (2d Cir. 2020); *see also Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.,* 2021 WL 535485, at *4, n.4 (S.D.N.Y. Feb. 12, 2021) (A ruling on a preliminary injunction motion "does not constitute the law of the case, that is for purposes of further proceedings, specifically the merits of the case.") (collecting cases).

"That is because a preliminary determination of a likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *United States v. Doonan*,2022 WL 954600, at *5, n.4 (S.D.N.Y. Mar. 30, 2022) (quoting *Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992)), *appeal dismissed* (June 1, 2022).

## VIII.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

Initially, Plaintiff failed to comply with this Court's Individual Rules § 3(A)(ii), which requires the parties to arrange a pre-motion conference by submitting a letter setting forth the basis for the anticipated motion. Plaintiff's pre-motion letter made no mention of an anticipated motion to strike affirmative defenses, and this Court never granted Plaintiff permission to file such a motion. (Dkt. Nos. 46, 48). "This violation alone would justify a decision to strike plaintiffs' motions." *Andrews v. Freemantlemedia N.A., Inc.*, 2014 WL 6686590, at *15 (S.D.N.Y. Nov. 20, 2014) (collecting cases), *aff'd sub nom. Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67 (2d Cir. 2015); *see also House v. Wackenhut Servs., Inc.,* 2012 WL 4017334, at *2 (S.D.N.Y. 2012). A motion filed without leave does not "achieve the premotion conference requirement's aim of 'resolving conflicts between the parties and preventing the filing of unnecessary papers.'" *Andrews*, 2014 WL 6686590, at *15 (citing *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987)).[2]

Regardless, Fed. R. Civ. P. 12(f) provides that, "the court may strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 12(f)). Such motions to strike affirmative defenses are left to the district court's discretion. *See Figueroa v. RSquared NY, Inc.*, 2015 WL 3936256, at *3 (E.D.N.Y. June 26, 2015) (collecting cases). Motions to strike affirmative defenses are generally disfavored and will not be granted unless it appears to a certainty

---

[2] Plaintiff's motion is also untimely. Pursuant to Fed. R. Civ. P. 12, a party may move to strike affirmative defendants "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).

that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense. *See id*; *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting *Salcer v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir. 1984)); *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 131 (S.D.N.Y. 2015). The standard to prevail on a motion to strike affirmative defenses is "demanding." *Tardif*, 302 F.R.D. at 32. The moving party must satisfy a stringent three-pronged test: (1) there must be no questions of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense. *See id*; *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 131 (S.D.N.Y. 2015) (citation omitted).

In his Notice of Motion, Plaintiff seeks an Order "striking defendant's First Through Twenty-Second Affirmative Defenses." Plaintiff does not even mention the argument in his memorandum of law. Although Plaintiff's counsel's attorney declaration contains impermissible and generic legal conclusions regarding the motion to strike affirmative defenses, those portions of the declaration should be stricken, as argued above. (*See supra* Point I.) With no factual or legal support properly set forth for his motion to strike, Plaintiff certainly cannot meet the demanding standard set forth above.

There is no basis to strike Defendants' First Affirmative Defense that the Amended Verified Complaint fails to state a claim upon which relief may be granted. It is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in an answer. *See Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 2014 WL 3950897, at *4 (S.D.N.Y. Aug. 13, 2014) (citation omitted). "Although the defense is arguably redundant in that it is essentially a general denial, there is no prejudicial harm to plaintiff and the defense need not be stricken." *Id.* (citation omitted). The other defenses are proper as well.

<u>Second, Fifth</u>: A statement that Defendants did not violate the Constitution and, therefore, may not be held liable under 42 U.S.C. § 1983.

<u>Third</u>: Put Plaintiff on notice that the suit against Evans was akin to the suit against the District, as argued above.

<u>Fourth</u>: A statement that Plaintiff cannot demonstrate a claim under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

<u>Sixth, Seventh</u>: Plaintiff has unclean hands based on his own culpable conduct at issue in this case.

<u>Eighth, Fifteenth, Sixteenth</u>: Plaintiff failed to comply with the Notice of Claim requirements. *See* Point III(A), *supra.*

<u>Ninth, Seventeenth</u>: The alleged defamatory statements are entitled to the two privileged referenced above. *See* Point III(C), *supra.*

<u>Tenth</u>: Plaintiff failed to properly plead his defamation claim.

<u>Eleventh</u>: Plaintiff failed to mitigate his damages in a number of ways, *e.g.* by failing to seek counseling for any alleged emotional damages claims.

<u>Twelfth</u>: Defendants actions were motivated by legitimate pedological concerns. *See* Point II, *supra.*

<u>Thirteenth, Fourteenth</u>: Punitive damages are unavailable here. *See* Point VI, *supra.*

<u>Eighteenth, Nineteenth, Twentieth, Twenty-First</u>: The alleged defamatory statements are not defamatory or otherwise fail to meet the elements. *See* Point III(C).

<u>Twenty-Second</u>: Plaintiff's injunctive relief claims are moot. *See* Point V, *supra.*

Even if some of these defenses are more akin to denials rather than true affirmative defenses, "courts in this Circuit generally will not strike even a seemingly redundant defense akin to a general denial in the absence of prejudice." *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 453 (W.D.N.Y. 2020) (collecting cases); *Am. Home Energy Inc. v. AEC Yield Cap. LLC*, 2022 WL 595186, at *18 (E.D.N.Y. Feb. 28, 2022); see also *United States v. Grimmel Indus., LLC*, WL 3730856, at *4 (N.D.N.Y. Aug. 6, 2018) (citation omitted) (denying motion to strike affirmative defenses that the plaintiff contended were "merely denials of the plaintiff's allegations in the form

of an affirmative defense"). If anything, these defenses provide Plaintiff with more notice of Defendants' arguments than that to which he is entitled. *See Figueroa v. RSquared NY, Inc.,* 2015 WL 3936256, at *4. There is no basis to strike these affirmative defenses because Plaintiff does not allege, much less prove, he is prejudiced by the inclusion of the defense. Quite the opposite.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that their motion for summary judgment should be granted, Plaintiff's motion for partial summary judgment should be denied, and this case should be dismissed in its entirety, together with such further relief as this Court deemed just and proper.

Dated: Carle Place, New York
   March 30, 2023

SOKOLOFF STERN LLP
*Attorneys for Defendants*

By:  Steven C. Stern
    Chelsea Weisbord
    179 Westbury Avenue
    Carle Place, New York 11514
    (516) 334-4500

25