UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x

CASE LEROY,

                              Plaintiff,

- against -

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his
capacity as Superintendent of Schools of
Livingston Manor Central School District,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/2023
```

Docket No. 21-cv-6008(NSR)

The Clerk of the Court is directed to terminate this motion at ECF No. 75, as it is not a motion; rather, it is a brief that supports the motion filed at ECF No. 58.

Dated: July 14, 2023
       White Plains, NY

SO ORDERED:

*[signature]*
HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

 

**Plaintiff's Reply Memorandum of Law in Support of
His Motion for Summary Judgment and in Opposition
to Defendant's Motion for Summary Judgment**

 

_____
JEROME T. DORFMAN
Attorney for Plaintiff
8 Breezy Hill Road
Parksville, NY 12768
(845) 747-9403

Preliminary Statement

Carl Sandburg once said, "If the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell" The table is in splinters and everyone's ears are ringing.

Defendant begins by making several procedural contentions in its Memorandum of Law, none of which have any merit. Defendant, like a pitcher, is aiming for the corners of the plate in order to divert the Court from coming to the unavoidable determination that it violated plaintiff's civil rights and defamed him. It then attempts to distinguish the facts of this case from those in Mahanoy because that seminal Supreme Court decision conclusively mandates a finding that plaintiff is entitled to judgment on his civil rights claim. Finally, it devotes the vast majority of its papers to its misconceived theory that a disruption of school activities by the actions of a student entirely outside of school, not at a school event, not using school facilities, and having nothing to do with its students, personnel, or faculty is sufficient to allow it to discipline him. Mahanoy definitively refutes that contention.

Defendant attempts to demonize plaintiff, calling him a "racist" *ad nauseam,*[1] for an extremely brief lapse of comprehension of an 18-year-old in posting an ambiguous photograph, which he corrected in at most ten minutes, and which was greatly compounded by the actions of others, in order to justify its destruction of a young man's memories of high school for the rest of his life.

---

[1] The essay which plaintiff wrote in his BOCES Public Safety class, six months before he posted the photo in issue, condemning the actions of the officers in the George Floyd case, thoroughly belies defendant's contention that he intended it to be an expression of racism. See Exhibit 1 to the Reply Declaration of plaintiff's counsel.

## POINT I

### This Case Cannot be Distinguished from <u>Mahanoy</u> Neither on the Facts Nor the Law

Defendant bases its defense against summary judgment solely upon the premise that a substantial disruption of school activities is sufficient to authorize a school to discipline a student, even where there is no nexus between the student's conduct and the school. In doing so, it has placed the school in the position of policing all of a student's conduct outside of school and regulating his or her constitutional right of free speech and expression.

Defendant states that "no case that (sic) holds that a school may not discipline a student for the type of racist conduct that caused the level of disruption that happened here." However, that is precisely the holding in <u>Mahanoy Area School District v. B. L.</u> 141 S. Ct. 2038 (2021), in which the Supreme Court unequivocally stated that a school may not discipline a student for conduct entirely out of school and bearing no nexus to the school. The facts in <u>Mahanoy</u> are indistinguishable from those in this case, perhaps even more attenuated, in that the posting by the plaintff therein mentioned a school activity. The Supreme Court noted,

> The circumstances of B. L.'s speech diminish the school's interest in regulation. B. L.'s posts appeared outside of school hours from a location outside the school. She did not identify the school in her posts or target any member of the school community with vulgar or abusive language. B. L. also transmitted her speech through a personal cellphone, to an audience consisting of her private circle of Snapchat friends. 141 S. Ct. at 2039.

As here, there was no connection whatsoever between the posting and the school. Defendant attempts to denigrate plaintiff's reliance on this definitive case by using the cutesy metaphor of plaintiff "shaking his pom poms." The fact is that <u>Mahonoy</u> slams the door on defendant's

2

contention that it had the right to discipline plaintiff for his off-campus conduct.

The Court held,

> ... three features of off-campus speech often, even if not always, distinguish schools' efforts to regulate off-campus speech. First, a school will rarely stand in loco parentis when a student speaks off campus. Second, from the student speaker's perspective, regulations of off campus speech, when coupled with regulations of on-campus speech, include all the speech a student utters during the full 24-hour day. That means courts must be more skeptical of a school's efforts to regulate off-campus speech, for doing so may mean the student cannot engage in that kind of speech at all. Third, the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus, because America's public schools are the nurseries of democracy. Taken together, these three features of much off-campus speech mean that the leeway the First Amendment grants to schools in light of their special characteristics is diminished. 141 S. Ct. at 2039.

Justice Alito, in his well-reasoned concurring opinion in <u>Mahanoy</u>, summed it up perfectly.

> At the other end of the spectrum, there is a category of speech that is almost always beyond the regulatory authority of a public school. This is student speech that is not expressly and specifically directed at the school, school administrators, teachers, or fellow students and that addresses matters of public concern, including sensitive subjects like politics, religion, and social relations. Speech on such matters lies at the heart of the First Amendment's protection (citations omitted)
>
> * * *
>
> If a school tried to regulate such speech, the most that it could claim is that offensive off-premises speech on important matters may cause controversy and recriminations among students and may thus disrupt instruction and good order on school premises. But it is a "bedrock principle" that speech may not be suppressed simply because it expresses ideas that are "offensive or disagreeable. (citations omitted)
>
> * * *
>
> To her credit, petitioner's attorney acknowledged this during oral argument. As she explained, even if such speech is deeply offensive to members of the school community and may cause a disruption, the school cannot punish the student who spoke out; "that would be a heckler's veto." Tr. of Oral Arg. 15–16.17 The school may suppress the disruption, but it may not punish the off-campus speech that prompted other students to engage in misconduct. See id., at 5–6 ("[I]f listeners riot because they find speech offensive, schools should punish the rioters, not the speaker.

3

> In other words, the hecklers don't get the veto"); see also id., at 27–28. This is true even if the student's off-premises speech on a matter of public concern is intemperate and crude. When a student engages in oral or written communication of this nature, the student is subject to whatever restraints the student's parents impose, but the student enjoys the same First Amendment protection against government regulation as all other members of the public. And the Court has held that these rights extend to speech that is couched in vulgar and offensive terms. (citations omitted) 141 S. Ct. at 2050- 2053.

Thus, neither is community pressure a justification for violation of a student's civil rights. Defendant devotes a substantial amount of its opposition to establishing that members of the community were clamoring for it to take action. Fully 21 out of its 48 exhibits consist of emails received by it regarding this matter. In her argument before the Court, even the attorney for the school district in <u>Mahanoy</u> conceded this to be an insufficient basis to discipline a student.

While <u>Mahanoy</u> may not cover all instances of off-campus speech, the possible exceptions that it noted were all with regard to speech which related in some way to the school. It is crystal clear from the Court's opinion that off-campus speech which entirely unrelated to the school is fully protected by the First Amendment.

Defendant cites <u>Tinker v. Des Moines Independent Community School Dist.</u>, 393 US 503 1969 as support for its misguided contention that a disruption of school activities caused by a student's speech is sufficient to allow it to discipline the student. It does not so hold. As quoted in plaintiff's main Memorandum of Law, the court in <u>Tinker</u> stated,

> In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," the prohibition cannot be sustained. (citation omitted) <u>Tinker</u> at 508-509

The defendant cites several cases as justifying their breach of the plaintiff's free speech rights, all of which involve a connection between the speech and the school, its staff, or its students. In *Wisniewski v. Bd. of Education of Weedsport CSD*, 494 F.3d 34 (2nd Circuit, 2007), the student's speech contained a threat to a teacher and an icon depicting the killing of that teacher. *Cuff v. Valley Central School District*, 677 F.3d 109 (2nd Cir., 2012) involved a crayon drawing by the student in response to an in-class assignment. In it, the student expressed a desire to "[b]low up the school with the teachers in it." It also involved another drawing by the student depicting a person firing a gun, and above it, the student had written: "One day I shot 4 people each of them got fo[ur] blows + they were dead. I wasted 20 bulits [sic] on them." Again, this speech had a direct relationship to the school. Defendant cites *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260 (1988) for the proposition that "a school need not tolerate student speech that is inconsistent with its basic educational mission, which then proceeded to hold that the Court could not censor similar speech outside of school.

The "substantial disruption" upon which defendant hangs its hat as justifying its suspension of plaintiff consisted of "a kind of buzz up the building" (See Defendant's exhibit I), a brief demonstration held by a few students, which defendant chose to allow[2], discussions in class of the issue of racism, and the calling of an assembly of the entire student body in grades 7 through 12. On the one hand, defendant correctly maintains that it has a duty to address this issue as part of its curriculum. Evans affidavit ¶21. On the other hand, it contends that doing so constituted a substantial

---

[2] Defendant Evans could have simply told them that it wasn't permitted. But, to the contrary, he allowed the protest to be held after the assembly, perhaps in violation of school rules, and even supervised it together with a guidance counselor. Unquestionably, such a protest would not have been allowed if it was conducted by students who were complaining about the prosecution of Derek Chauvin for the murder of George Floyd. But because it was for a popular cause, it was condoned. In any event, the defendants cannot create a disruption to the school and then utilize it as grounds to have disciplined the plaintiff.

5

disruption to the educational process. It can't have it both ways. If teachers and administrators chose to engage in these discussions at that point, that merely amounted to a shift in the time when the discussions took place and can hardly be denominated a "material and substantial disruption." It could have and should have taken place at some point in the course of instruction. It was understandable, but entirely optional on the part of defendant to do it at that time. Accordingly, all of the padding of defendant's opposition papers with affidavits and exhibits in an attempt to establish that there was a "substantial disruption" of the school day are unavailing to defendant.

  Defendant takes entirely irreconcilable and convoluted positions with regard to the photo that plaintiff posted. On the one hand, it calls it "racist" and admittedly disciplined plaintiff for posting it. On the other hand, it asserts that because he didn't perceive it to be racist, it cannot be held liable for disciplining him. Yet, it attaches 21 emails as exhibits calling the posting racist in an effort to establish that it was. Whether or not the posting can be deemed racist, plaintiff had to right to post it. The first amendment proscribes infringement upon a person's right to free speech <u>and expression.</u> It cannot be argued that the posting of a photograph with a caption is not an "expression" on the part of the poster. The fact remains that defendant intended to violate plaintiff's civil rights based upon its perception that the photo was racist. None of the cases cited by defendant support this bizarre contention.

  In view of the foregoing, it is abundantly clear that <u>Mahanoy</u> mandates the granting of summary judgment to plaintiff on his civil rights claim.

## POINT II

### The Granting of a Preliminary Injunction by
### the State Court Constitutes Law of the Case

Defendant contends that the State Court preliminary injunction does not constitute law of the case because it is tentative pending a motion for summary judgment or a trial. Defendant is asking this Court to overrule the decision of a judge of coordinate jurisdiction, the State Court Justice who issued the preliminary injunction. It cites several trial level federal cases in support of its contention, which hardly qualifies as "black letter law" and those cases do not state an absolute rule that a preliminary injunction has no binding effect. In Alharbi v. Miller, 368 F. Supp. 3d 527 (E.D.N.Y. 2019), the court stated,

> Although they do not say it explicitly, plaintiffs seem to rely on the Court's decision in issuing the preliminary injunction as law of the case, and demand that the Court issue a similar order for the additional plaintiffs named in the amended complaint. But plaintiffs have provided no reason why the Court should adhere to its preliminary decision ...

There were subsequent events that took place after the granting of the preliminary injunction, so the court was free to reassess its prior decision. In Securities and Exchange Commission v. North Am. Research & Development Corp., 59 F.R.D. 111 (S.D.N.Y. 1972) the court stated,

> This rule stems from the due process requirement that the parties should not be foreclosed on the merits by a hearing that expressly addressed only preliminary questions, and at which parties may not have presented their best possible case.

In Yonkers Raceway, Inc. v. Standardbred Owners Ass'n, Inc., 21 F.R.D. 3 (S.D.N.Y. 1957) the court held,

> The rule is stated to be: This court will not consider any of the questions decided on the hearing for a preliminary injunction as res judicata. They are open for review, but they should be adhered to, unless it clearly appears that an error was committed, or

7

>that additional facts were brought out at the trial which demand a modification or reversal of the views expressed at the preliminary hearing. 21 F.R.D. at 4.

In <u>United States v. Adegbite</u>, 877 F.2d 174, 178 (2d Cir.), cert. denied, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989), the Court of Appeals stated,

>Under the law-of-the-case doctrine, we will generally adhere to our own earlier decision on a given issue in the same litigation. See, e.g., Doe v. New York City Department of Social Services, 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); United States v. Fernandez, 506 F.2d 1200, 1203 (2d Cir.1974). Though the issue is not closed with all of the finality of res judicata, id., and though in appropriate circumstances we may exercise our discretion to review the earlier ruling, the strong policy favoring finality impels us to exercise the power to review such rulings only sparingly, see, e.g., United States v. Diaz, 834 F.2d 287, 289 (2d Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988); McClain v. United States, 676 F.2d 915, 917 (2d Cir.), cert. denied, 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); United States v. Fernandez, 506 F.2d at 1203-04.

While this Court is not the one which issued the preliminary injunction, it stands in the place of the state court Justice who did prior to the removal of this case. Defendant had a full and fair opportunity to present its defense to the state court. Indeed, it presented the very same arguments there as it does here, that a substantial disruption of the regular course of instruction was caused by plaintiff, justifying his being disciplined. There are only two salient facts in this case establishing the violation of plaintiff's right of free speech and expression, those being that plaintiff posted a photo on SnapChat and defendant disciplined him for doing so. They are not in dispute. Those facts could not and did not change after the granting of a preliminary injunction to plaintiff. Defendant cannot present any new facts if it is granted an opportunity to go to trial. Defendant is seeking a second bite at the apple by opposing summary judgment on this cause of action. It is urging this Court to substitute its judgment for that of the state court Justice on the same facts. That is impermissible.

8

## POINT III

### Decision Should be Reserved on Defendant's Request to Dismiss Plaintiff's Cause of Action for Defamation and Plaintiff Should be Given an Opportunity to Move for Permission to File a Late Notice of Claim with Respect Thereto

As noted in the Reply Declaration of plaintiff's counsel, being submitted herewith, defendant's counsel took advantage of a courtesy extended by plaintiff's counsel in order to cause plaintiff to miss the 90 day deadline for filing a Notice of Claim. Defendant would not be prejudiced in the least if a late Notice of Claim was allowed to be filed. The purpose of a Notice of Claim is to allow the defendant to conduct an investigation into the facts surrounding the claim while they are still fresh. Here, the facts related solely to the statements of Superintendent Evans, of which he was personally aware. Nothing could change through the passage of time. No witnesses could become unavailable. The proof of his slanderous statements is contained in his own testimony at the Superintendent's hearing. Defendant's Exhibit I. The Court should not condone this ruse and allow plaintiff an opportunity to move for permission to file a late Notice of Claim.

## POINT IV

### Plaintiff's Cause of Action for Defamation Adequately States a Cognizable Claim

Plaintiff has demonstrated the existence of all of the elements necessary to sustain a claim of defamation. He stated before an assembly of all to the student body in grades 7-12 and most, if not all of the faculty, that "a lot of people viewed the [photographs] as racist in nature," that it had no place in our school," "that it was being addressed and being investigated," and that "racism

9

cannot and will not be tolerated. It was unnecessary for him to name plaintiff as one of the students involved, as it was common knowledge among the student body and the community at large that one of the photographs was posted by plaintiff. Defendant's Statement of Undisputed Facts #51, 52, 54, 58, 66, 89.[3] He solidified his labeling of plaintiff as a racist by suspending him, a fact that was readily apparent to his fellow students as well as the community. His statements were false as they pertained to plaintiff, they were made to the entire group of people at the assembly, they were made intentionally and recklessly, to satisfy public outcry for action (which defendant admits in its brief at p. 18), which was not his duty, and indisputably calling a person a racist constitutes slander *per se*. There can be no doubt that he exposed plaintiff to all of the various negative views of him enumerated by defendant in its Memorandum of Law. It was not an expression of opinion, but a statement of fact. Otherwise, defendant would have had no basis for disciplining plaintiff. The non-verbal conduct to which plaintiff referred in his Memorandum of Law was disciplining plaintiff. This followed his verbal statements to the assembled students and faculty. Even if Superintendent Evans' statements could be viewed as opinion when made, which plaintiff by no means concedes, they became statements of fact through his subsequent action in disciplining plaintiff.

Defendant's contention that Superintendent Evans' statements are covered by absolute privilege because he is a "high public official" is ludicrous. He is the Superintendent of a small school district (Defendant's Statement of Undisputed Facts #2), one of over 800 in this state, not the president of a college or a county official.

---

[3] Defendant does not and cannot distinguish which photograph was deemed racist in the emails it received. Plaintiff is only responsible for one photo, an ambiguous one. It is entirely likely that the reaction was to the explicit one altered by an unknown person to add the Black Lives Matter logo to it. There were many alterations of the one plaintiff posted.

## POINT V

### The Remainder of Defendant's
### Contentions are Meritless

The March 25 Photograph is a "Red Herring."

The photograph which plaintiff took in school, depicting one student consensually demonstrating a "hold" which he learned in his public safety to another student, was admitted by Superintendent Evans not to have played any part in his disciplining of plaintiff during the argument of plaintiff's motion for a preliminary injunction. Exhibit 1 to the Declaration in Support of Plaintiff's motion. As the state court Justice noted in his opinion it was an effort by defendant to "bootstrap" the other photograph into one which related to the school. Nonetheless, defendant's Memorandum of Law is replete with references thereto and is included as an exhibit to its Statement of Material Facts.

Plaintiff is Not Suing Superintendent Evans Personally

Superintendent Evans is named in his representative capacity only. He has not been served in this case, which defendant admits in its Memorandum of Law. It was totally unnecessary to burden this Court with a makeweight motion to dismiss the action as against him.

The Declaration of Plaintiff's Counsel Does Not Contain Any Statements that are Not Within His Personal Knowledge, Nor are there Any Legal Conclusions

Defendant contends that the Declaration of plaintiff's counsel in support of his motion should be stricken because it is not based upon personal knowledge and contains unspecified "impermissible legal conclusions." Upon reading the declaration, the court will find that it recites that it is based upon personal knowledge and there is no fact stated therein that is not within counsel's personal knowledge. Moreover, there are no legal conclusions stated therein. Not

11

surprisingly, defendant fails to enumerate which parts of the Declaration are not within counsel's personal knowledge and what legal conclusions are contained therein.

Defendant Finds Fault With the Form of Plaintiff's Statement of Undisputed Material Facts.

This is an example of "the pot calling the kettle black." Defendant's Statement of Undisputed Material Facts contains 155 separate statements that read like a narrative of its case. It repeatedly and unnecessarily quoted the content of each and every one of the 21 emails that it received, rather than simply stating that it received an email and identifying it by its exhibit number, following it up with a quotation of the response by the faculty member thereto. This unreasonably burdened plaintiff with having to restate the contents of each one in response to it, as required by Rule 56.1. Fully 46 of those statements quoted the contents of the email and defendant's responses. More importantly, these emails are totally irrelevant to this case. As has been amply demonstrated above, public outcry cannot be used as a basis for disciplining a student. Accordingly, the Court should strike defendant's Statement of Undisputed Facts as not complying with the letter and spirit of Rule 56.1.

## CONCLUSION

Summary judgment should be granted to plaintiff on both of his causes of action and defendant's motion for summary judgment should be denied in its entirety.

_____
JEROME T. DORFMAN
Attorney for Plaintiff
8 Breezy Hill Road
Parksville, NY 12768
(845) 747-9403
