UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/05/2024
```

CASE LEROY,

                          Plaintiff,

     -against-

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, *in his capacity as
Superintendent of Schools of Livingston Manor
Central School District*,

                          Defendants.

No. 21-CV-6008 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Case Leroy ("Plaintiff") brings this action against Livingston Manor Central School District (the "District") and John P. Evans ("Superintendent Evans"), in his capacity as Superintendent of Schools of the District (together, "Defendants") for defamation and violations of Plaintiff's civil rights under the New York State Constitution, the First Amendment to the United States Constitution, and 42 U.S.C. § 1983 ("Section 1983"). Specifically, Plaintiff alleges that Defendants violated his rights and defamed his character when they suspended Plaintiff from school and extracurricular activities after he posted a photograph on a social media platform.

Before the Court are Defendants' motion for summary judgment (ECF No. 63) and Plaintiff's partial motion for summary judgment (ECF No. 58). For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

## BACKGROUND

The following facts are derived from Defendants' Local Rule 56.1 Statement ("Def. 56.1," ECF No. 68), Plaintiff's Response to Defendants' Rule 56.1 Statement ("Pl. 56.1 Resp."), Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1," ECF No. 78), and Defendants' Response to

Plaintiff's Rule 56.1 Statement ("Def. 56.1 Resp.," ECF No. 69),[1] the parties' declarations, and the parties' exhibits,[2] and are not in dispute, except where noted.[3]

Defendant John Evans is the Superintendent of Schools for the District, a school district located in Sullivan County, New York. (Def. 56.1 ¶ 1.) The District has one school building that houses grades pre-K through 12th grade and consists of approximately 420 students. (*Id.* ¶ 2.) Plaintiff Case Leroy was a 12th grade student at the District and a student in a "public safety program" offered by Sullivan BOCES during the 2020–2021 school year. (*Id.* ¶¶ 6-7; Pl. 56.1 Resp. ¶ 8.)

    *a.   The Photograph of Plaintiff and Student A*

On April 19, 2021, Plaintiff, along with his three friends Student A, Student B, and Student C, drove to a dance studio in Hurleyville to pick up Student C's sister. (Def. 56.1 ¶¶ 11-12.)  In the late afternoon or early evening, Student B took a photograph (the "Photo") in the parking lot of the dance studio and then immediately sent it to Plaintiff and Student A via Snapchat. (*Id.* ¶¶ 9, 12.) The Photo depicts Plaintiff lying on the ground while his friend Student A kneels over him.

---

[1] Plaintiff's response to Defendants' Rule 56.1 statement was not filed electronically on the docket but was submitted to the Court via email.

[2] Citations to "Def. Ex." refer to the Exhibits attached to the Declarations of Chelsea Weisbord in Support of Defendants' Motion for Summary Judgment. (ECF Nos. 64 and 71.) Citations to "Pl. Ex." refer to the Exhibits attached to the Declaration of Jerome T. Dorfman in Support of Plaintiff's Motion for Summary Judgment. (ECF No. 77.) Where applicable, the Court refers to page numbers using the Bates numbers applied by the parties.

Citations to the Deposition of Case Leroy ("C.L. Tr.") refer to Def. Exs. C and D. Citations to the Deposition of Gordon Leroy ("G.L. Tr.") refer to Def. Ex. E. Citations to the Deposition of Amy Leroy ("A.L. Tr.") refer to Def. Ex. F. Citations to the Deposition of Student A ("Student A Tr.") refer to Def. Ex. G. Citations to the Deposition of Student B ("Student B Tr.") refer to Def. Ex. H.

[3] In response to many of the statements in Defendants' Rule 56.1 statement, Plaintiff's response indicates he either "has no personal knowledge" to admit or deny the statement or "neither admits or denies this statement and defers to what [D]efendants' witnesses testify to at trial, subject to cross-examination." (*See generally* Pl. 56.1 Resp..) Pursuant to Local Rule 56.1, each statement of fact "will be deemed admitted for purposes of the motion unless specifically controverted" by the opposing party. Accordingly, the Court deems those statements not explicitly denied by Plaintiff admitted. *Buckman v. Calyon Sec.*, 817 F.Supp.2d 322, 328 n.42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted.") (citation omitted). The Court further notes that even where Plaintiff explicitly denies a statement in his response, Plaintiff fails to cite to specific admissible evidence in support of its denial in further contravention of the rules. S.D. & E.D. N.Y. R. 56.1(d) (each statement in a Rule 56.1 statement, "including each statement controverting any statement of material fact, must be followed by a citation to evidence which would be admissible.").

(*Id.* ¶ 8; Def. Ex. J.) All three students posted the Photo on their Snapchat stories around the same time that evening while they were still in the dance studio parking lot. (Def. 56.1 ¶¶ 13, 24.) Plaintiff posted the Photo to his Snapchat story with the caption "Cops got another" and Student A posted the Photo to his Snapchat story with the caption "Another one down." (*Id.* ¶¶ 14, 16.) Student B shared the Photo to his Snapchat story without a caption. (*Id.* ¶ 21.) When Plaintiff posted the Photo, it was visible to all of his Snapchat friends—approximately 60 to 100 people, including a "good amount" of students at Livingston Manor High School. (*Id.* ¶ 16; Pl. 56.1 Resp. ¶ 16; C.L. Tr. 37:24-38:3.)

Plaintiff and the other two students posted the photos on April 19, the day before the jury returned a verdict in Derek Chauvin's trial for the murder of George Floyd.[4] (Def. 56.1 ¶ 23.) An unknown person added the "Black Lives Matter" logo to Student A's post, although Student A told District administrators that he himself had added the logo. (*Id.* ¶¶ 19-20; Pl. 56.1 Resp. ¶¶ 19-20; Student A Tr. 31:4-24.) Shortly after posting the Photo with the caption, Plaintiff deleted his Snapchat post because his phone started "blowing up" with messages from other people threatening him and cursing him out. (Def. 56.1 ¶ 25; C.L. Tr. 116:2-23, 117:18-24.) Plaintiff also received several death threats that evening. (Def. 56.1 ¶ 28.) Student A and Student B also deleted their Snapchat posts shortly after posting—Student A because he was receiving negative messages and Student B because he was receiving messages telling him to take the Photo down. (*Id.* ¶¶ 25, 30, 32.) After posting the Photo, Plaintiff, Student A, and Student B received a barrage of phone calls, and people were showing up to their homes and Plaintiff's parents' places of employment. (*Id.* ¶ 36.)

---

[4] On April 20, 2021, Dereck Chauvin, a white police officer, was found guilty of the murder of George Floyd, a black man. In May 2020, Chauvin had kneeled on Floyd's neck for over nine minutes during an arrest of Floyd in Minneapolis, Minnesota.

    b.  *Immediate Response from District Personnel, Students, and the Community*

By 9:00 pm on April 19, 2021, emails complaining about the photos circulating social media began flooding Superintendent Evans, Principal Shirlee Davis', and other District administrators' and employees' inboxes and continued throughout the night. (Evans Aff. ¶¶ 7-8; Davis Aff. ¶¶ 3-4; Towsley Aff. ¶ 3; Def. Exs. M-II.) Contrary to Plaintiff's contention, District personnel, students, and community members immediately recognized the Photo as referencing the events of the ongoing trial of Derek Chauvin for the murder of George Floyd. (Evans Aff. ¶ 5; Davis Aff. ¶ 2; Towsley Aff. ¶ 4; *see generally* Def. Ex. M-II.) Members of the community sent emails to District administrators, employees, and officials complaining about the photos, calling them racist and disgusting, and identifying Plaintiff by name as one of the students involved. (*Id.*; Def. 56.1 ¶ 43.) The emails further criticized the District for purportedly tolerating the behavior, and demanded the District take disciplinary action. (Def. 56.1 ¶ 45; Evans Aff., ¶¶ 7-8; Davis Aff., ¶¶ 3-4; Towsley Aff., ¶ 3; *see* Def. Exs. N, P-S, U-X, Z-GG.) Superintendent Evans and Principal Davis responded to most of the emails they received, which took their time away from regular District operations. (Def. 56. 1 ¶ 92.)

The following day at school, students discussed the photos during and between classes, and high school staff and teachers discussed the social media posts in their classrooms (*Id.* ¶¶ 95-96.) Multiple staff members also approached district administrators requesting to know how the District planned to respond to the unrest created by the photos. (*Id.* ¶ 97.)

That same day, the school held an assembly attended by all students, teachers, guidance counselors, and building administrators in grades 7th through 12th to address the incident. (*Id.* ¶ 9; Pl. 56.1 ¶ 3.) During the assembly, Evans stated that "a lot of people viewed [the photographs] as racist in nature," that "it had no place in our school" and that "it was being addressed and being

investigated." (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3.) District administrators also informed students that school counselors would be available for students who needed counseling in relation to the photos. (Def. 56.1 ¶ 104.) After the assembly, students held a planned demonstration to express their disagreement with the photos and the photos' connotations, during which they knelt for nine minutes to honor George Floyd. (*Id.* ¶ 105.) After the demonstration ended, students relocated to the school's health room to further discuss the photos, racism, insensitivity, and George Floyd. (*Id.* ¶ 106.) Throughout the school day, state trooper and law enforcement officers from the Sheriff's Department remained on school grounds, and the school received multiple media requests regarding the photos. (*Id.* ¶¶ 107, 109.)

Superintendent Evans also released an official statement to the community, which he posted on the District's website on April 20, 2021. (*Id.* ¶108.) In the statement, Superintendent Evans indicated that the District was aware some students posted inappropriate photos and comments on social media. (Def. Ex. JJ.) He further indicated that the District takes such matters very seriously, and that an investigation was ongoing, although cases involving student discipline are confidential and cannot be discussed. (*Id.*) Finally, Superintendent Evans apologized on behalf of the District for the student behavior and stated that "racism cannot and will not be tolerated" by the District. (*Id.*)

       *c.   Investigation and Discipline of Plaintiff and the Other Students Involved*

On April 20, 2021, Superintendent Evans and Principal Davis launched an investigation and began by interviewing several students, including Plaintiff, Student A, and Student B, who all claimed it was a joke and they had no intention of being racist or offending anyone. (Def. 56.1 ¶ 116.) During the interview with Evans and Davis, Plaintiff admitted to posting the photograph. (*Id.* ¶ 118.) At the end of Plaintiff's interview, Superintendent Evans explained that the issue was

very serious, viewed as racist, and caused a significant disruption through the school district. (*Id.* ¶ 120.) On April 21, 2021, Principal Davis suspended Plaintiff from school for five days. (*Id.* ¶ 123.)

On April 21, 2021, Superintendent Evans contacted Capital Region BOCES District Superintendent Anita Murphy for assistance with regards to a social media incident occurring the evening of April 19, 2021 and April 20, 2021. (Def. Ex. MM. at 1.) The investigator, Bethany A. Centrone, Legal Counsel for Capital Region BOCES, was asked to investigate and provide a report regarding the incident to inform Evans with respect to potential discipline. (*Id.*) As part of her investigation, Centrone interviewed Superintendent Evans as well as students. (*Id.*) On April 23, Centrone issued a report that concluded there was sufficient evidence to determine Plaintiff engaged in behaviors that violated the Code of Conduct. (Def. 56.1 ¶ 126; Pl. 56.1 Resp. ¶ 126.) Centrone thus recommended that Plaintiff and the involved students be referred to a Superintendent's hearing to determine if additional discipline was warranted.[5] (Def. 56.1 ¶ 133.)

On April 27, 2021, Superintendent Evans held a Superintendents hearing to consider suspending Plaintiff beyond five school days, and Kate Reid served as a Hearing Officer. (Def. 56.1 ¶¶ 136-137; Pl. 56.1 Resp. ¶¶ 135-136.) At the hearing, Plaintiff testified voluntarily and under oath that he posted the Photo with the caption "Cops got another" on social media. (Def. 56.1 ¶¶ 138-39; Pl. 56.1 Resp. ¶¶ 137-38.) During the Superintendent's hearing, Reid found Plaintiff guilty of Article VI(A)(5) of the Code of Conduct, which prohibits engaging in any willful

---

[5] Specifically, Centrone determined that the following provisions of the Code of Conduct were implicated: (1) engaging in any willful act which disrupts the normal operation of the school community, Article VI(A)(5); (2) display or use of personal electronic devices . . . in a manner that is in violation of district policy, Article IV(C)(3); (3) discrimination, which includes using race, color . . . to deny rights, equitable treatment or access to facilities available to others, Article IV(E)(4); (4) harassment, which includes a sufficiently severe action . . . directed at an identifiable individual or group which [is] intended to be, or which a reasonable person would perceive as ridiculing or demeaning, and the creation of a hostile environment, Article IV(E)(5); and (5) engage in off-campus misconduct that interferes with, or can reasonably be expected to substantially disrupt the educational process in the school or at a school function Article IV(H). (Def. Ex. MM at 117-18.)

act which disrupts the normal operation of the school community ("Charge 1"). (Def. 56.1 ¶143.) Reid also sustained the District's fifth charge, finding that Plaintiff violated VI(H) by engaging in off-campus misconduct that interfered with or can reasonably be expected to substantially disrupt, the educational process in the school or at a school function ("Charge 5"). (*Id.* ¶ 114.)

On April 28, 2021, Reid issued a finding of fact and recommendation which memorialized her findings from the Superintendent's hearing regarding the charges and recommended Plaintiff be suspended through May 21, 2021, with the option for an earlier return if Plaintiff and his parents agree to enter a disciplinary contract and/or agree to participate in restorative practices in connection with the incident. (Def. 56.1 ¶ 145; Def. Ex. OO at 187.) Reid found the District sustained its burden regarding Charges 1 and 5 by providing competent evidence demonstrating the violations. (Def. 56.1 ¶ 148; Pl. 56.1 ¶ 4; Def. Ex. OO at 185-86.) Reid further concluded that "all told, the posts resulted in substantial interruptions in instruction and required substantial attention and intervention by multiple school administrators." (Def. Ex. OO at 185-86.)

Upon review of Hearing Officer Reid's recommendations, Superintendent Evans suspended Plaintiff for a period of instruction through May 21, 2021, and from non-academic, extracurricular activities for the remainder of the 2020-2021 school year, including the graduation ceremony. (Def. 56.1 ¶ 152; Pl. 56.1 Resp. ¶ 151; Pl. 56.1 ¶ 5.) Plaintiff appealed Superintendent Evan's decision to the School Board, which upheld the findings and discipline imposed. (Pl. 56.1 ¶ 6.)

After Plaintiff signed a contract of conduct, Evans permitted Plaintiff to return from suspension from instruction on May 20, 2021. (Def. 56.1 ¶ 153; Pl. 56.1 Resp. ¶ 152.) Plaintiff attended his high school graduation after obtaining injunctive relief from Judge Julian Schreibman of the New York State Court, County of Sullivan. (Def. 56.1 ¶ 156.)

## PROCEDURAL HISTORY

On June 16, 2021, Plaintiff commenced this action by filing a Complaint in the Supreme Court of the State of New York, County of Sullivan before Justice Schreibman. ("Notice of Removal," ECF No. 1, Ex. A.) On June 25, 2021, Justice Schreibman issued an oral order granting a preliminary injunction permitting Plaintiff to attend his school's graduation ceremonies.[6] (Pl. Ex. 2 at 9:12-17.) Upon the granting of the preliminary injunction, Plaintiff filed an Amended Complaint on July 2, 2021. (Amend. Compl. ¶ 4.) On July 13, 2021, Defendants removed the action to this Court. (*See generally* Notice of Removal.)

In his Amended Complaint, Plaintiff asserts causes of action for defamation and violations of his civil rights. Plaintiff seeks money damages as well as (1) a declaration that the acts of Defendants were unconstitutional, (2) the complete expungement from his transcripts and student files of any reference to his suspension from attending classes and from participating in school activities, and (3) for changes in the policies and procedures of the District, so that the same thing does not happen to his siblings or any other student. (Amend. Compl. ¶ 9.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse

---

[6] Plaintiff's Exhibit 2, attached to the Declaration of Jerome T. Dorfman, was not filed electronically on the docket, although it was submitted to the Court via email.

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009)

(citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

Plaintiff seeks summary judgment from the Court on her civil rights claim pursuant to Section 1983 and her state law defamation claim. Plaintiff also seeks a judgment from the Court striking Defendants' First through Twenty-Second affirmative defenses to Plaintiff's Amended Complaint.[7] (*See* Pl. Mot.) Defendants seek summary judgment to dismiss the action in its entirety.[8] (*See* Def. Mem.)

As a threshold matter, Plaintiff fails to substantively address Defendants' arguments to dismiss Plaintiff's claims for injunctive relief and punitive damages as well as violations of the New York State Constitution. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Capak v. Epps*, 662 F. Supp. 3d 463, 465 (S.D.N.Y. 2023) (quoting *Xu v. City of New York*, 2020 WL 2088301, at *4 (S.D.N.Y. Apr. 30, 2020)). The Court therefore dismisses Plaintiff's claims for violations of state constitutional law, permanent injunctive relief, and punitive damages as abandoned.

---

[7] Plaintiff filed the following papers for the Court's consideration on the instant motions: Plaintiff's Rule 56.1 Statement ("Pl. 56.1," ECF No. 78); Plaintiff's Rule 56.1 Response ("Pl. 56.1 Resp."); Plaintiff's Motion for Summary Judgment ("Pl. Mot.," ECF No. 58); Memorandum of Law in Support of his Motion for Summary Judgment ("Pl. Mem.," ECF No. 79); Plaintiff's Reply ("Pl. Reply," ECF No. 75); Declaration of Jerome T. Dorfman in Support ("Dorfman Decl." ECF No. 77); and Dorfman's Reply Declaration ("Dorfman Reply Decl.," ECF No. 74).

[8] Defendants filed the following papers for the Court's consideration on the instant motions: Defendants' Rule 56.1 Statement ("Def. 56.1," ECF No. 68); Defendants' Rule 56.1 Response ("Def. 56.1 Resp.," ECF No. 69); Defendants' Motion for Summary Judgment ("Def. Mot.," ECF No. 63); Defendants' Memorandum of Law in Support of their Motion ("Def. Mem.," ECF No. 70); Defendants' Reply ("Def. Reply," ECF No. 73); Declaration of Chelsea Weisbord ("First Weisbord Decl.," ECF No. 64); Declaration of Chelsea Weisbord ("Second Weisbord Decl.," ECF No. 71); Affidavit of John Evans ("Evans Aff.," ECF No. 65); Affidavit of Shirlee Davis ("Davis Aff.," ECF No. 66); Affidavit of Christian Towsley ("Towsley Aff.," ECF No. 67); and Declaration of Steven C. Stern ("Stern Decl.," ECF No. 72).

The Court addresses the remaining issues raised by the parties in turn.

### A.  Defendants' Request to Strike Dorfman's Declaration

Under Federal Rule of Civil Procedure 56(c)(4), an affidavit or declaration used to support or oppose a summary judgment motion must be made on personal knowledge, set out facts that would be admissible in evidence, and must show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Defendants request the Court to strike, at minimum, portions of the declaration of Jerome T. Dorfman that are not based on his personal knowledge and that contain legal arguments and conclusions. (Def. Reply at 2-3.)

Paragraphs 1 through 6 of Dorfman's declaration restates the procedural history of the case and the causes of action as alleged in the Verified Amended Complaint, both of which are presumably based on his personal knowledge and not placed at issue by either the Court or the parties. (*Id.* ¶¶ 1-6.) Paragraphs 7 through 9 mainly restate the arguments contained within Plaintiff's Memorandum of Law. (*Id.* ¶¶ 7-9.) While the Court declines to strike these statements, the Court will exercise its discretion to disregard these legal arguments and consider them as stated in Plaintiff's Memorandum. *Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49S, 2021 WL 763723, at *4 (W.D.N.Y. Feb. 26, 2021) (declining to strike attorney declaration but exercising its discretion to disregard repeated legal arguments contained therein).

Paragraphs 10 through 11, however, warrant further discussion. In response to Defendants' arguments, Plaintiff only asserts that the recited facts are within counsel's personal knowledge and that the declaration does not contain any legal conclusions. (Pl. Reply at 11-12.) This is objectively false. In his motion for summary judgment, Plaintiff sought for the Court to "strik[e] [Defendants'] First through Twenty-Second Affirmative Defenses." (Pl. Mot. at 1.) Instead of including his substantive arguments relating to his motion to strike in his memorandum of law, Plaintiff placed

all of the arguments on this issue in Dorfman's declaration. These portions of Dorfman's declaration consist entirely of legal argument and conclusory statements. This includes, for example, an assertion that the Complaint "plainly" states a cause of action and that mitigation of damages is inapplicable to a civil rights and defamation action. Moreover, Dorfman's declaration includes no citations to any case law at all.

Given that portions of Dorfman's declaration consist entirely of legal argument and legal conclusions, the Court may properly strike those portions from the record. *Elghossain v. Bank Audi S.A.L.*, No. 21CIV2162PGGBCM, 2023 WL 6390160, at *14 (S.D.N.Y. Sept. 29, 2023) ("A court may disregard legal arguments improperly set forth in a declaration.") (collecting cases); *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) (although declining to strike the attorney affidavit, declining to consider the legal arguments and factual allegations contained therein); *see also Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill*, 202 F. Supp. 2d 210, 213 (S.D.N.Y. 2002) (citing *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983)) ("An attorney's affidavit which is not based on personal knowledge of the relevant facts should be accorded no weight on a motion for summary judgment."). For the reasons stated below, however, whether the Court strikes the legal arguments and conclusions contained in Dorfman's declaration is inconsequential. As discussed in further detail below, the Court dismisses Plaintiff's claims in their entirety and denies Plaintiff's request to strike Defendants' affirmative defenses as moot. *See infra* at 21.

**B.  The Law of the Case Doctrine**

Plaintiff argues the law of the case doctrine prohibits Defendants from relitigating his civil rights claims given that the state court granted Plaintiff a preliminary injunction, which Plaintiff claims constitutes a finding that Defendants violated Plaintiff's civil rights. (Pl. Mem. at 6.) The

preliminary injunction granted by Judge Schreibman prohibited the District from barring Plaintiff from participating in graduation ceremonies that were scheduled for that weekend. (Pl. Ex. 2 at 2:4-19.) According to Plaintiff, the Court is bound by the state court's decision because Judge Schreibman found Plaintiff had a substantial likelihood of success on the merits and there has been no intervening change in the facts or the law. (Pl. Mem. at 6.)

A ruling on a temporary or preliminary injunction "does not constitute the law of the case and will not estop the parties or the court as to the merits of the case." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 556 (E.D.N.Y. 2019), *aff'd in part, dismissed in part*, 829 F. App'x 570 (2d Cir. 2020) (citing *Sec. & Exch. Comm'n v. N. Am. Research & Dev. Corp.*, 59 F.R.D. 111, 113 (S.D.N.Y. 1972)). "This rule stems from the due process requirement that the parties should not be foreclosed on the merits by a hearing that expressly addressed only preliminary questions, and at which [the] parties may not have presented their best possible case." *Id.*

Plaintiff has not cited any controlling law to the contrary. The two cases cited by Plaintiff are not within the context of a preliminary injunction.[9] (*See* Pl. Mem. at 6.) Accordingly, the law of the case doctrine shall not apply here to bar the Court from considering the merits of Plaintiff's free speech arguments. Moreover, while it is not clear exactly what facts and arguments Defendants orally presented before Judge Schreibman. Defendants argue that they have submitted significant additional evidence, particularly on the issue of disruption. (Def. Reply at 8.) Plaintiff does not challenge this point, but instead implies it is irrelevant. However, Plaintiff's assertion that "there are only two salient facts in this case" establishing a violation of Plaintiff's civil rights is a

---

[9] The two cases cited by Plaintiff are *Martin v. City of Cohoes*, 37 N.Y.2d 162, 332 N.E.2d 867 (1975) and *Erickson v. Cross Ready Mix, Inc.*, 98 A.D.3d 717, 950 N.Y.S.2d 175 (2012). In *Martin*, the New York Court of Appeals held that the law of the case doctrine has no binding force on appeal. 37 N.Y.2d at 165. In *Erickson*, the state court held the law of the case doctrine did not bar the Supreme Court from deciding an issue that had not been previously determined. 98 A.D.3d at 717.

narrow view of the case at hand. (See Pl. Reply at 8.) As further discussed below, the Court must consider more than the facts that Plaintiff posted a photo on Snapchat and then was disciplined for doing so. *Mahanoy*, 141 S. Ct. at 2046-48 (2021) (in determining whether to afford a cheerleader's speech First Amendment protection, the court considered the content of the speech, the context of the speech, and the school's interest in regulating the speech).

Finally, the Court notes that Judge Schreibman himself acknowledged that "the Court clearly would prefer to have had the opportunity to digest the parties' submissions, answers to the Court's questions and the applicable law," particularly considering that *Mahoney Area Sch. Dist. V. B.L. by & through Levy*, 141 S. Ct. 2038 (2021) had been decided only days prior. The Court has had the privilege to thoroughly consider the parties' arguments and the controlling legal precedent, and therefore addresses Plaintiff's First Amendment claim on its merits.

### C.  First Amendment Speech

#### a.   Applicable Law

"Students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate, however, the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (cleaned up). The Supreme Court has made it clear that "courts must apply the First Amendment in light of the special characteristics of the school environment." *Mahanoy Area Sch. Dist.*, 141 S. Ct. at 2044 (citation omitted).

Under *Tinker*, "[s]tudent speech may be curtailed if the speech will 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 112 (2d Cir. 2012) (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969)). Courts recognize that the administrators should be given

leeway to address any potential disruption before it manifests itself. *See Wood v. Strickland*, 420 U.S. 308, 326, 95 S. Ct. 992, 43 L.Ed.2d 214 (1975) ("it is not the role of the federal courts to set aside decision of school administrators which the court may view as lacking a basis in wisdom or compassion."); *Doninger v. Niehoff*, 527 F.3d 41, 51 (2d Cir. 2008) ("[Plaintiff's] argument is misguided insofar as it implies that *Tinker* requires a showing of actual disruption to justify a restraint on student speech"); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F.Supp.2d 461, 481 (E.D.N.Y. 2009), aff'd, 623 F.3d 71 (2d Cir. 2010), cert. denied, 2011 U.S. LEXIS 1809 (Feb. 28, 2011); *Lavine v. Blaine Sch. Dist.*, 257 F.3d 981, 989 (9th Cir. 2001) ("*Tinker* does not require school officials to wait until disruption actually occurs before they may act.").

Whether the speech occurred off school grounds is relevant, though not dispositive. *Mahanoy*, 141 S. Ct. at 2045. While the Court afforded First Amendment protection to a cheerleader's off-campus speech decrying her rejection from the varsity cheerleading squad, it explicitly disagreed with the Third Circuit's conclusion that the *Tinker* standard did not apply to speech occurring off school grounds. *Id.* at 2044-45. When speech occurs off campus, "the leeway the First Amendment grants to schools in light of their special characteristics is diminished." *Id.* at 2046. That said, "[t]he school's regulatory interests remain significant in some off-campus circumstances." *Id.* at 2045.

### b. Material Dispute of Fact

At the outset, the Court finds there is no dispute of material fact. The parties do not dispute that there were clear threats to Plaintiff and the other students' safety—Plaintiff received death threats after he posted the photos and Plaintiff and the other students involved were told not to come to school the following day due to concerns for their safety (Def. 56.1 ¶¶ 28, 94.) While Plaintiff steadfastly denies a "substantial" disruption to the school after the photos circulated social

media, the following key events are undisputed: high school staff and teachers discussed the social media posts in their classrooms; multiple staff members approached district administrators regarding how the District planned to respond to the unrest created by the photos; the administrative team planned and coordinated an assembly for students in grades 7 through 12 to the address the photos; school counselors made themselves available for students who needed counseling in relation to the photos; after the assembly, students held a planned demonstration to express their disagreement with the photos and the photos' connotations; after the demonstration, students engaged in further discussions about the photos, racism, insensitivity, and George Floyd; state trooper and law enforcement officers from the Sheriff's Department remained on school grounds throughout the day; Superintendent Evans issued a statement to the school community; and there were various media requests to the District regarding the photos.[10] (*Id.* ¶¶ 96-100, 104-109.)

Thus, the parties only dispute whether these events that resulted from Plaintiff's off-campus speech constitute a sufficient "material disruption" so that it was appropriate for the school to take disciplinary action against Plaintiff. Defendants argue that they did not violate Plaintiff's First Amendment rights because the disruption caused by the photos "was so overwhelming and severe that it grounded the regular school day to a halt" sufficient to satisfy the *Tinker* standard. (Def. Mem. at 8-9.) Plaintiff challenges Defendants' contention that Plaintiff's actions "substantially disrupted" the school day and argues that Plaintiff's actions bear no nexus to the school at all. (Pl. Mem. at 4-6.)

---

[10] Again, in response to many of these statements in Defendants' 56.1, Plaintiff indicates he either "has no personal knowledge" to admit or deny the statement or "neither admits or denies this statement and defers to what [D]efendants' witnesses testify to at trial, subject to cross-examination." (*See* Pl. 56.1 Resp. ¶¶ 96-113.) As discussed above, the Court deems these statements admitted. *Buckman*, 817 F.Supp.2d at 328 n.42 ("56.1 statements not explicitly denied by plaintiff are deemed admitted.") (citation omitted).

### c.  Substantial Disruption

In applying *Tinker*, the Second Circuit has held that "the relevant inquiry is whether the record demonstrates facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 113 (2d Cir. 2012) (quoting *DeFabio v. E. Hampton Union Free Sch. Dist.,* 623 F.3d 71, 78 (2d Cir.2010)) (cleaned up). The standard is not "actual disruption" but rather "whether school officials might reasonably portend disruption from the student expression at issue." *Id.* at 113 (citing *Doninger*, 527 F.3d at 51) (internal quotation marks omitted). Finally, "[t]he test is an objective one, focusing on the reasonableness of the school administration's response, not on the intent of the student." *Cuff*, 677 F.3d at 113 (collecting cases).

*First*, Defendants reasonably foretold a substantial disruption given the barrage of emails they received the night the photo was posted from students and community members alike. *See Doninger*, 642 F.3d at 348-49 (school officials reasonably concluded student's blog post was potentially disruptive where controversy surrounding the subject of the blogpost "already resulted in a deluge of phone calls and emails, several disrupted schedules, and many upset students" and the disruption continued the next day as upset students met with district personnel to resolve the controversy). This is further supported by the explicit call to action in the emails that demanded a response from the District. Their apprehension of the disturbance potentially caused by the photo is also evidenced by their decision to direct the Plaintiff and the other students involved not to attend school the next day.

*Second*, Defendants have also established *actual* disruption occurred. Here, the facts are distinguishable from *Mahanoy*, in which the Court found "no evidence in the record of the sort of 'substantial disruption' of a school activity or a threatened harm to the rights of others that might

justify the school's action." 1341 S. Ct. 2047. The events following the posting of the photos amounted to more than merely a "buzz" in the building. (*See* Pl. Mem. at 2.) The record establishes that, despite Plaintiff's unwillingness to concede as such, the photos caused a quick and emotional response from students who deemed them inappropriate and offensive and felt that the photos made them feel unsafe and uncomfortable. (*See* Def. Exs. M-P, R-T, Y.) The following day at school, students continued to discuss the photos both during and between class, and students even planned a protest in response to the photos, which they ultimately carried out by kneeling in the gymnasium for nine minutes to honor George Floyd. (Def. 56.1 ¶¶ 98, 105; Student A Tr. 74:11-16.)

Considering these actions taken by the students in response to the photos, the Court further disagrees with Plaintiff that the assembly and discussions in classrooms regarding the photos, its connotations, and George Floyd as a "choice" on behalf of Defendants. (*See* Pl. Reply at 5-6.) As Judge Schreibman put it, "our public schools have an obligation to teach students antiracism, to be antiracist, and to engage in antiracist conduct." (Pl. Ex. 2 at 4:3-5.) In providing students the opportunity and space to discuss the photos, its implications, and the topical issue of the murder of George Floyd and police brutality, the District directly served this purpose.

Plaintiff's strongest argument is that only the response to the photos, and not the photos themselves, had a nexus to the school as they did not occur on school grounds and was not posted on any website created or sanctioned by the School District. (Pl. Mem. at 10-11; Pl. 56.1 ¶ 7.) However, the Court finds that when the impact of a student's speech spills into school grounds in a manner so instantaneous and significant, the speech falls outside of the First Amendment's ordinary protection. *Compare Mahanoy*, 594 U.S. at 2047-48 (no substantial disruption where "discussion of the matter took, at most, 5 to 10 minutes of an Algebra class for just a couple days,

and that some members of the cheerleading team were upset about the content of the student's snapchats.") (citation and internal quotation marks omitted); *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 929 (3d Cir. 2011) (reversing and remanding district court judgment where school officials could not reasonably forecast substantial disruption and where "beyond general rumblings, a few minutes of talking in class, and some officials rearranging their schedules," no substantial disruption occurred). As Defendants put it, Plaintiff's speech "created a situation that the District had a 'duty to address'" which created a nexus to the school. (Def. Reply at 8.)

The District has an interest in maintaining order within its schools, promoting tolerance and respect, and ensuring students feel comfortable and secure within the school environment. Accordingly, the Court finds not only that District personnel reasonably portended a substantial disruption given the response to the photos the same night they were posted, but also that Defendants have established actual disruption based on the events occurring at the school the day after the photo was posted. Accordingly, the Court finds Defendants did not infringe on Plaintiff's First Amendment free speech rights when they disciplined Plaintiff.

### D.  Plaintiff's State Law Defamation Claim

Defendants argue that the Court should dismiss Plaintiff's state law defamation claims because Plaintiff failed to comply with the Notice of Claim requirement. (Def. Mem. at 12-13.) In response, Plaintiff does not deny that the Notice of Claim requirement applies here or that he failed to file one. (Pl. Reply at 9.) Instead, Plaintiff argues Defendants' counsel "took advantage" of Plaintiff which caused him to miss the 90-day deadline. (*Id.*) Accordingly, Plaintiff requests the Court reserve its decision on his state law defamation claim to permit him to move to file a late notice to claim, without any prejudice to Defendants.

Defendants removed the action to this Court on July 13, 2021 and sought an extension of time to respond to the Complaint on July 20, 2021. (Notice of Removal at 3; Stern Decl. ¶ 5; *see also* ECF No. 3.) Plaintiff's defamation claim accrued when Superintendent Evans made the allegedly defamatory statements on April 20, 2021. (Pl. 56.1 ¶ 3.) The deadline for Plaintiff to file a notice of claim was therefore July 19, 2021.  *See* N.Y. Educ. Law § 3813(2) ("[N]o action ... founded upon tort shall be maintained against [the board of education] . . . unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law."); N.Y. Gen. Mun. Law § 50–e (providing that a notice of claim must be filed "within ninety days after the claim arises."). This is only days before Defendants removed the case to federal court and *before* Defendants sought an extension of time for the deadline to respond to the Complaint.

Regardless, Plaintiff should have been prepared to comply with the notice of claim requirement *before* being made aware of it in Defendants' affirmative defenses. Plaintiff counsel's unawareness of the law is no defense. *Gaston v. New York City Dep't of Health Off. of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 326 (S.D.N.Y. 2006) ("[I]gnorance of the law is not an adequate excuse for failure to file a notice of claim.").

Moreover, Plaintiff also failed to timely file a late notice of claim within the one-year and ninety-day period of limitations, or by July 19, 2022. Instead, Plaintiff inserted his request for leave to file a late notice of claim in his Reply Memorandum of Law filed in June 2023. (*See* Pl. Reply.) Given that Plaintiff could have cured the procedural deficiency to save his defamation claim and only sought to do so well after the fact, the Court denies Plaintiff's motion for leave to file a late notice of claim.

Plaintiff has failed to file a notice of claim as well as a late notice of claim, and the Court denies his request to do so. Accordingly, Plaintiff's defamation claim is dismissed.

### E. Plaintiff's Motion to Strike Defendants' Affirmative Defenses

Having granted Defendants' motion for summary judgment and dismissing Plaintiff's claims in their entirety,[11] the Court denies Plaintiff's motion to strike Defendants' affirmative defenses as moot.[12] *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 625 F. Supp. 3d 269, 291 (S.D.N.Y. 2022), *reconsideration denied*, No. 18-CV-12255-LTS-KHP, 2022 WL 4484515 (S.D.N.Y. Sept. 27, 2022) (denying motion to strike affirmative defense to quantum meruit claim as moot because court dismissed plaintiff's quantum meruit claim).

## CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for partial summary judgment is denied. Plaintiff's causes of action are dismissed in their entirety.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 58 and 63, to enter judgment in favor of the Defendants, and to terminate the action.

Dated:   April 5, 2024                                    SO ORDERED:
         White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

---

[11] Defendants also argue that all claims against Superintendent Evans should be dismissed as duplicative of the claims against the District. (Def. Mem. at 19-20.) Because the Court dismisses all of Plaintiff's claims, the Court need not address this argument.

[12] Even if the Court were to consider Plaintiff's motion on its merits, the Court would deny it. "Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a plaintiff to prevail is demanding." *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M.C.F. Assocs., Inc.*, 530 F. Supp. 3d 460, 464 (S.D.N.Y. 2021) (citation omitted). Plaintiff included its arguments on its motion to strike in an attorney declaration, rather than its Memorandum of Law. (*See* Dorfman Decl. ¶¶ 10-20.) Those arguments failed to cite to the standard for a motion to strike, to cite any supporting case law, and to include sufficient arguments for the Court to find Plaintiff satisfied the high standard.