USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/23/2024

**MEMORANDUM ENDORSEMENT**

<u>Leroy v. Livingston Manor Central School District et al</u>, 7:21-cv-6008 (NSR)

      The Court is in receipt of the attached motion from Plaintiff, dated May 8, 2024, seeking an order from the Court to correct or amend the record for appeal of the Court's Opinion & Order granting Defendants' motion for summary judgment and denying Plaintiff's cross-motion for summary judgment.

      The Court directs Plaintiff to re-file the following documents on ECF: (1) Declaration of Jerome T. Dorfman in Support of Motion for Summary Judgment, with all accompanying exhibits; and (2) Plaintiff's Response to Defendants' Rule 56.1 Statement.

      The Clerk of Court is respectfully directed to terminate the motion at ECF No. 93.

Dated: May 23, 2024
      White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

CASE LEROY,

                        Plaintiff,         Docket No. 21-cv-6008(NSR)

            - against-         **UNOPPOSED MOTION TO**
                                    **CORRECT THE RECORD**

LIVINGSTON MANOR CENTRAL SCHOOL
DISTRICT and JOHN P. EVANS, in his
capacity as Superintendent of Schools of
Livingston Manor Central  School District,

                        Defendants.

- - - - - - - - - - - - - - - - - - x

      In accordance with Federal Rule of Appellate Procedure 10(e), plaintiff Case Leroy files this motion to correct the record to include (1) Exhibit 2 to the Declaration of Jerome T. Dorfman in support of motion for summary judgment and (2) Plaintiff's response to Defendants' Rule 56.1 statement. The former is attached to this motion as Exhibit A. The latter is attached to this motion as Exhibit B. FRAP 10(e) provides for corrections to the record where "any difference arises about whether the record truly discloses what occurred in the district court…" or where "anything material to either party is omitted … in the record by error or accident…." Corrections may be made "by the district court before or after the record has been forwarded." FRAP 10(e)(2)(B).

      The Court directed the parties not to file any of their documents until all of the papers on the motion had been served. Due to an outage on the Southern District of New York's CM/ECF system, the filing of Plaintiff's and Defendant's papers were delayed beyond the date upon which the Court directed them to be filed. Plaintiff submitted his counsel's declaration in support of summary judgment, including Exhibit 2 thereto, and his response to Defendants' Rule 56.1

statement to the Court via email, in accordance with the Court's direction. Inadvertently, in the haste to file all of the Plaintiff's documents once the system came back online, these two documents may have been omitted from filing. Both documents were also served on defendants. The Court considered both documents in connection with its April 5, 2024 summary judgment order. *E.g.,* Dkt. 86 at 8 n.6, 10 n.7. So the response "was before the [] court in the course of its proceedings leading to the judgment under review and was mistakenly omitted from the record." *Robinson v. Sanctuary Record Grps.*, 589 F. Supp. 2d 273, 275 (S.D.N.Y. 2008) (internal quotation omitted).

Thus Plaintiff Leroy moves for an order directing the clerk to docket Exhibit 2 to the Dorfman declaration and Plaintiff's response to Defendant's Rule 56.1 statement so that the entire record accurately reflects what was before the Court when it considered the parties' competing motions for summary judgement in connection with its April 5, 2024 order. Defendants do not oppose this motion. Plaintiff does not request argument on this motion.

Dated: May 8, 2024                                    Respectfully submitted,

/s/ *Jerome T. Dorfman*
Jerome T. Dorfman
*Attorney for Plaintiff Case Leroy*
8 Breezy Hill Road
Parksville, New York 12768
Phone: (845) 747-9403
Email: jdlawny@verizon.net

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Motion via the CM/ECF system for the Southern District of New York, thus sending the Motion to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: May **, 2024

/s/ *Jerome T. Dorfman*
Jerome T. Dorfman

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF ULSTER : CIVIL TERM

3    - - - - - - - - - - - - - - - - - - -x

4    CASE LeROY,                              :    Index No.
                                                   E-2021-968
5                          Plaintiff,         :

6            -against-                        :

7    LIVINGSTON MANOR CENTRAL SCHOOL               BENCH
     DISTRICT and JOHN P. EVANS, in his      :    DECISION
8    Capacity as Superintendent of
     Schools of Livingston Manor
9    Central School District,
                             Defendants.     :

10   - - - - - - - - - - - - - - - - - - -x
                                    Ulster County Courthouse
11                                  285 Wall Street
                                    Kingston, NY 12401
12                                  June 25, 2021
                                    VIA TEAMS
13

14   B e f o r e:

15       HON. JULIAN D. SCHREIBMAN, Supreme Court Justice

16   A p p e a r a n c e s:

17           LAW OFFICES of JEROME T. DORFMAN
                   Attorney for Plaintiff
18               8 Breezy Hill Road
                 Parksville, NY 12768
19           By:   JEROME T. DORFMAN, ESQ.

20           HOGAN, SARZYNSKI, LYNCH, DEWIND & GREGORY, LLP
                   Attorneys for Defendants
21               520 Columbia Drive
                 Johnson City, NY 13790-3305
22           By:   CAMERON B. DANIELS, ESQ., of Counsel

23

             JOHN P. EVANS, Superintendent
24

25

MARIA GILES, SENIOR COURT REPORTER

1          THE COURT:  We will go back on the record in the

2     matter of LeRoy against Livingston Manor Central School

3     District.

4          The Court has conducted oral argument over the

5     past hour-and-a-half regarding the Plaintiff's request for

6     a Preliminary Injunction prohibiting the School District

7     from barring the Plaintiff from participating in

8     graduation ceremonies scheduled for this weekend.

9          The injunction is granted for the following

10    reasons.  In the first instance, the Court clearly would

11    prefer to have had the opportunity to provide a written

12    decision to digest more deeply the parties' submissions,

13    answers to the Court's questions and the applicable law,

14    particularly in light of the fact that the United States

15    Supreme Court issued extremely relevant precedent just a

16    few days ago.  However, by virtue of the nature of the

17    relief involved here, there is really no alternative but

18    to give you a decision on the record and to explain it as

19    best as I can in this more informal setting.

20          In determining whether or not the Plaintiff is

21    entitled to a Preliminary Injunction, the Court is

22    required to consider three factors:  The Plaintiff's

23    likelihood of success on the merits; the existence of

24    potentially irreparable harm in the absence of an

25    injunction; and a balance of the equities.

1        Upon all the evidence presented, the Court

2   believes that all three of these favor the Plaintiff's

3   position.  First, with respect to a likelihood of success

4   on the merit.  The Court agrees that the first photo in

5   the classroom context is not really relevant to the

6   determination here.  It is being used, not in bad faith,

7   but being used, in some sense, to attempt to bootstrap the

8   rules applicable to in-school conduct to what is really

9   happening here which is a regulation of out-of-school

10  conduct.  Neither of the other students in that photo were

11  disciplined.  The photo happened in a context of an actual

12  classroom setting that teaches such conduct.  Essentially,

13  it's being raised as a sort of prior bad act to analogize

14  to a criminal or civil case.  There is no reason to

15  believe that that was intended to be part of or otherwise

16  was a basis for a punishment here which deals with the

17  April 19th incident.

18        With respect to the April 19th photo, and here

19  again I think we can only deal with the photo actually

20  communicated by the plaintiff, not that communicated by

21  any other person.  Whether that speech was intended to be

22  political is disputed by the parties.  That dispute,

23  however, is somewhat less relevant to the extent that the

24  School District takes the position that it is essentially

25  punishing the political content of that speech.

```
 1              I want to make it clear that this Court is not
 2     saying that antiracist speech and racist speech are on the
 3     same footing.  They are not.  Indeed, our public schools
 4     have an obligation to teach students antiracism, to be
 5     antiracist and to engage in antiracist conduct.  And they
 6     have an equal duty to proscribe racist acts, to condemn
 7     racism, and to punish racist acts, including potentially
 8     racist remarks and speech that occurred in the school.  At
 9     the same time, as the Supreme Court has recently
10     articulated in the Mahanoy case, schools are also
11     nurseries of democracy, and in that regard are expected to
12     have a wide bound of tolerance for political speech.
13     Using that opportunity to educate kids and in furtherance
14     of that necessarily to allow in some instances to rise and
15     fall and understand the consequences of that speech in
16     terms of how it is received.  In this matter it is clear
17     to the Court that, if the School District is correct in
18     its interpretation of the photographs, then it is
19     punishing protected First Amendment speech.  And there is
20     no question that the Plaintiff here has a First Amendment
21     right to engage in speech of that nature.
22              That does not mean that the School District
23     cannot punish certain speech that would otherwise be
24     protected.  Indeed, that is exactly what the cases that we
25     have been discussing wrestle with, and there is no
```

1    question as reflected in the Supreme Court's Mahanoy

2    decision that it is a very difficult case, it's a very

3    difficult matter to wrestle with, hence the reason that

4    that decision gives relatively little guidance to other

5    Courts as to how to implement it.  Nonetheless, one of the

6    factors significant here is the fact that there is no

7    nexus whatsoever to the school in this act of speech.

8    It's not directed at the school.  It doesn't mention the

9    school.  It didn't happen at the school.  It doesn't

10   relate to any events that were taking place at the school.

11   Indeed, the only reason that the school became involved

12   was that it received communications from persons who

13   believe that by virtue of this Plaintiff's status as a

14   student at the school the school should be, in some sense,

15   responsible for regulating his behavior.  But it is

16   precisely that circumstance that the Mahanoy decision

17   urges caution.  A school does not stand in the place of

18   parents when it comes to regulating out-of-court conduct

19   or speech, and the fact that persons ask the school to do

20   so does not empower the school to do so.  Rather, the

21   school's role in regulating out-of-court speech is, as the

22   Supreme Court has now emphasized, extremely limited.

23            In this matter, moreover, there was very

24   ambiguous proof of actual racial animus by the Plaintiff.

25   I don't disagree with the school's conclusion that the

1    photograph is disturbingly similar to that of Officer

2    Chauvin and George Floyd.  Nonetheless, the intent and

3    purpose of posting that photograph is contested by the

4    plaintiff.  And the proof introduced by the school on that

5    subject is ambiguous, particularly in light of the

6    recently discovered evidence that the Plaintiff actually

7    wrote an essay sympathetic to George Floyd, taking the

8    position that the police actions with respect to Mr. Floyd

9    were excessive and indeed criminal and should be

10   sanctioned with imprisonment.

11            And finally, staying on the prong of likelihood

12   of success, the Court expects that the decision of the

13   Supreme Court in Mahanoy will govern this case.  In

14   looking at the facts of Mahanoy, which involved speech

15   directed at the school; vulgar speech directed at the

16   school; directed at personnel of the school; directed at

17   activities and institutions at the school and nonetheless

18   found them to be beyond reach of the school's punishing

19   authority, found them to be protected speech even though

20   it consisted essentially simply of a vulgarity directed at

21   the school.

22            The Court believes that it is likely that

23   Mahanoy governs this case and will probably compel a

24   ruling against the School District in this case.  I do

25   not, by saying that, mean to imply that I am prejudging

1    the ultimate case.  But I am required to assess the

2    likelihood of success and it appears to me that Mahanoy

3    probably governs this case and in a way that is favorable

4    to the Plaintiff.  Accordingly, I find that the plaintiff

5    is likely to succeed on the underlying lawsuit.

6           With respect to irreparable harm.  There is

7    clearly irreparable harm to the Plaintiff if the

8    injunction is not granted.  Graduation from high school is

9    literally a once-in-a-lifetime event.  At the same time,

10   there is essentially no harm to the School District if the

11   injunction is granted.  The Plaintiff has already been

12   punished extensively.  He was unable to attend his prom.

13   He was unable to participate in sports or extracurriculars

14   and he was removed from the school for a period of time.

15   Moreover, if a higher court were ultimately to find my

16   ruling today here to be an error there would be no

17   diminution of the School District's interest in deterring

18   this kind of conduct in the future simply because one

19   portion of its punishment was unable to be enforced.

20   Therefore, I find that there would be irreparable harm to

21   the Plaintiff if the injunction were not granted during

22   the pendency of this action.

23           Finally, the Court must consider the balance of

24   equity in this case.  Again, in a broad sense, the School

25   District has an interest in fostering and inculcating a

1    community free of racism, free of racially based discord

2    and animus.   However, as I have indicated under the

3    likelihood of success, it appears that the school

4    overreached in its application of those principles to this

5    particular case.   The record reflects in the

6    recommendations by Attorney Kate Reid that although this

7    student is near the end of his senior year of high school

8    he has no history whatsoever of prior school-based

9    discipline.   This is essentially a first offense.   In

10   addition, the school received a number of letters

11   supporting the Plaintiff's character from the community

12   which, apparently, are not controverted.   As noted, there

13   is, in addition to that, substantial ambiguity about the

14   proof in this matter in terms of the actual mechanisms by

15   which the speech was communicated.   Challenging or not, in

16   cases involving social media, a School District, I

17   believe, is required to be sufficiently fluent in those

18   platforms and those accounts, to be able to describe

19   exactly how they are disseminated, by whom and, to the

20   extent there are modifications to images, how they are

21   done.

22          In this case, while there is no detailed proof

23   on the matter, the Court shares Plaintiff counsel's view

24   that to the extent there was disruption it was almost

25   certainly caused, not by this plaintiff's conduct, but by

```
 1    the other student who took the position of Officer Chauvin
 2    in the photo and added the racially offensive commentary
 3    to the photo.  Overall, in the context of the balancing of
 4    equity, even if this is conduct that may be regulated by
 5    the school, whether the punishments meted out, in
 6    particular denying access to graduation as to which there
 7    is no suggestion that he was anywhere -- anything but
 8    entitled to attend on the basis of his coursework and
 9    record at the school, strikes the Court as excessive,
10    potentially grossly excessive relative to the conduct the
11    School District seeks to proscribe.
12            Accordingly, the Court believes that equities
13    balance in favor of allowing the Plaintiff to attend the
14    graduation.  That is the ruling of the Court.  If either
15    counsel wishes to place anything on the record in regard
16    to the ruling I will give you the opportunity to do that
17    now.
18            MR. DORFMAN:  I just wish to thank the Court for
19    your decision.
20            THE COURT:  Understood, Mr. Dorfman.
21            MR. DANIELS:  Yes, thank you, your Honor.  The
22    District would --
23            THE COURT:  -- respectfully disagree --
24            MR. DANIELS:  -- and object to some of the
25    determinations which we can as long as I can just say we
```

1   object I don't think we need to put anything else on the

2   record.   I did have a procedural question, your Honor.

3   The Order to Show Cause directed that opposition papers be

4   filed by today.   I did not interpret that to mean an

5   answer to the Plaintiff's complaint.

6        THE COURT:  No, that is correct, only to the

7   Preliminary Injunction Order to Show Cause.  You have

8   whatever time limit would normally be applicable in the

9   matter.  Perhaps, in light of my determination here, maybe

10   there is a basis to reach some kind of accommodation

11   rather than engage in litigation over the course of the

12   summer.  That's up to the parties.

13        MR. DANIELS:  Understood.

14        THE COURT:  I appreciate again the very thorough

15   efforts to litigate this on short notice and in a changing

16   legal context I appreciate everyone's input, including

17   Mr. Evans' assistance in elucidating some of the conduct.

18   Thank you all and be safe out there.

19            *      *      *

20   Certified to be a true and accurate transcript.

21

22   Maria Giles, Sr. Court Reporter

23

24

25

Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

CASE LEROY,

                     Plaintiff,           Docket No. 21-cv-6008(NSR)

           - against -           **PLAINTIFF'S RESPONSE TO**
                                  **DEFENDANT'S STATEMENT OF**
LIVINGSTON MANOR CENTRAL SCHOOL   **MATERIAL FACTS**
DISTRICT and JOHN P. EVANS, in his
capacity as Superintendent of Schools of
Livingston Manor Central  School District,

                  Defendants.

- - - - - - - - - - - - - - - - - - x

      Plaintiff, by his attorney, Jerome T. Dorfman, responds to Defendant's Statement of Material

facts, as follows:

      Plaintiff objects to all statements of fact that are supported solely by the affidavits submitted

in opposition to plaintiff's motion for summary judgment, as plaintiff has not had an opportunity to

cross-examine the affiants and until such time as he has that opportunity, they are merely

contentions. Plaintiff also objects to defendant's support of statements based upon self-serving

documents created by persons whom plaintiff has not had the opportunity to cross-examine. Finally,

plaintiff objects to the form of defendant's statements to the extent that they unnecessarily quote the

content of documents rather than state that the document exists, thereby placing an undue burden

upon plaintiff to restate each quotation before responding to it.

    *1. Defendant Livingston Manor Central School District ("District") is a school district*

*located in Sullivan County, New York.*

    Undisputed

*2. The District is small; there is one school building that houses grades pre-K through 12th and consists of approximately 420 students.*

Undisputed

*3 . Defendant John Evans is the Superintendent of Schools for the District. He has been the Superintendent since 2017.*

Undisputed

*4. Shirlee Davis was the Middle School and High School Principal for the District from 2018 until her retirement in June of 2022.*

Undisputed

*5. Christian Towsley is the High School Counselor for the District. He has bene the High School Counselor since 2002.*

Undisputed

*6. Plaintiff Case Leroy was a 12th grade student at the District during the 2020-2021 school year.*

Undisputed

*7. Plaintiff was also a student in a "public safety program" offered by Sullivan BOCES.*

Undisputed, except that plaintiff was a student in that program during the 2020-2021 school year.

*8. The photograph at issue in this case depicts Plaintiff lying on the ground, as his friend Student A kneels over him.*

Plaintifff refers to the photo as to its content.

*9. This photo was taken on April 19, 2021, sometime in the late afternoon or early evening, in the parking lot of a dance studio in Hurleyville.*

Undisputed

*10. Plaintiff, along with his three friends, Student A, Student B, and Student C drove to a dance studio to pick up Student C's sister from dance class.*

Undisputed

*11. Plaintiff drove his vehicle with Student A as his passenger, and Student C drove another car with Student B as a passenger.*

Undisputed

*12. Student B took the photo and immediately sent it to Plaintiff and Student A via Snapchat.*

Undisputed

*13. All three students posted the April 19 photo on their Snapchat stories that same evening, while still in the dance studio parking lot.*

Undisputed

*14. Plaintiff posted the April 19 photo to his Snapchat story, with the caption "Cops got another."*

Undisputed

*15. By posting the April 19 photo on his Snapchat stories, it was visible to all of his Snapchat friends, which was approximately 60 to 100 people.*

Undisputed

*16. This largely included students at Livingston Manor High School.*

Admit that it included such students, but the cited support does not demonstrate that it "largely" did so.

*17. Student A posted the April 19 photo on his Snapchat story with the caption "Another one*

*down."*

Undisputed

*18. When Student A posted the photo, he was aware of the similarities between the photo and the death of George Floyd; he intended it as a "joke" relating to Floyd's death.*

Plaintiff refers to the cited testimony for its content.

*19. A Black Lives Matter ("BLM") logo was also added to Student A's post.*

Undisputed, except that it was not added by plaintiff or the other students and the person who did so is unknown.

*20. Student A told District administrators that he added the BLM logo himself.*

Undisputed that he did so, but farther down on the cited page of his testimony he denied it.

*21. Student B also shared the April 19 photo on his Snapchat story, without a caption.*

Undisputed

*22. Student B realized the photo he took of Plaintiff and Student A shared similarities to George Floyd's death.*

Undisputed

*23. Plaintiff, Student A, and Student B all posted the photo on April 19, the day before the jury returned a verdict in Derick Chavin's trial for the murder of George Floyd.*

Undisputed

*24. All three posted the photo at around the same time.*

Undisputed

*25. During an April 20, 2021 interview with Superintendent Evans and Principal Davis, Student B stated that Student A posted the photo with the BLM logo, and he and Plaintiff reposted the photo afterwards.*

Plaintiff neither admits or denies this statement, as he has not had an opportunity to question Student B about it and it was not raised in his deposition.

*26. Plaintiff, Student A, and Student B, all deleted their Snapchat posts shortly after posting them.*

Undisputed

*27. Plaintiff removed to his Snapchat post because his phone started "blowing up" with messages from other people who were threatening him and cursing him out about what he had posted.*

Denied. Plaintiff testified that he deleted it "when" his phone started "blowing up", not "because."

*28. Plaintiff received several death threats on the evening of April 19, 2021, including a threat from someone who said they were going to kill him and put him at the bottom of the ocean.*

Undisputed

*29. Plaintiff cannot remember if these messages characterized his Snapchat post as racist or referenced George Floyd by name, but he remembers those who messaged him reacted negatively to his post.*

Admit that plaintiff remembers that the messages he received were negative, but otherwise denies this statement.

*30. Student A also deleted his post after receiving a lot of negative messages. For instance, people were calling him a names like "racist scumbag." Most of the negative posts characterized the photo as racist.*

Undisputed, except that the quoted testimony does not support the statement that most of the negative posts characterized the photo as racist.

*31. For the remainder of the drive to Student A's house, Plaintiff and Student A discussed that people were re-posting the photo on several social media platforms, including Snapchat, Facebook, Instagram, and Twitter, and that they were receiving negative, and threatening, comments.*

Undisputed

*32. Student B who was in Student C's vehicle—also deleted the photo shortly after posting it because he was receiving messages from people, both students and adults, telling him to take it down.*

Undisputed

*33. Plaintiff spent much of the night crying because he felt like he put his and his family's life in danger.*

Undisputed

*34. Plaintiff told his mother, Amy Leroy, that he was receiving messages from people who were accusing him of being racist for posting the picture.*

Undisputed

*35. Many community members posted on various social media platforms, including Snapchat, Instagram, Facebook, and Twitter, chastising the photo as racist.*

Undisputed, except that the quoted testimony did not say that the photo was characterized as racist.

*36. After they posted the photo, Student A, Student B, and Plaintiff received a barrage of phone calls, and people were showing up to their houses and to Plaintiff's parents' places of employment.*

Undisputed

*37. By 9:00 p.m. on April 19, 2021, emails complaining about racist and inappropriate photos of District students circulating social media began flooding Superintendent Evans and Principal Davis' inboxes and continued into the night.*

Plaintiff refers to the cited support for their content, without admitting the truth thereof.

38. *Other District administrators and employees received similar emails. (Evans Aff, ¶ 7; Davis Aff, ¶ 3; Towsley Aff., ¶ 3; Ex. M; Ex. O; Ex. X; Ex. Z; Ex. DD; Ex. GG.)*

Plaintiff refers to the cited support for their content, without admitting the truth thereof.

39. *In addition to the April 19 photo, Plaintiff took another photo which circulated on social media. (Evans Aff., ¶ 6; Ex. D at pp. 202-03, 204-05, 210-11.*

Plaintiff admits that he took the photo, but denies that he circulated it on social media and that it has any relevance to this case.

40. *That photo shows one student holding another student of color over a desk in a classroom in the Livingston Manor School District with his hands behind his back*

Plaintiff refers to the photo for its contents and denies the characterization of one of the students depicted therein as a "student of color" and that it has any relevance to this case.

41. *Plaintiff took the March 25 photo of two students, Student D and Student E, during the school day, specifically during his first period English class.*

Plaintiff denies that it took place "during" his first period English class. In the quoted testimony, plaintiff stated that he did not remembe whether it was taken during of after class.

42. *District personnel, students, and community members immediately recognized the April 19 photo was a reference the events of the ongoing trial of Derick Chauvin for the murder of George Floyd in Minnesota.*

Plaintiff denies this statement and it is unsupported in the referenced exhibits.

43. Members of the community reached out to District administrators, employees, and officials via email to complain about both the April 19 photo and the March 25 photo.

Plaintiff denies this statement insofar as it refers to the March 25 photo and it is unsupported in the referenced exhibits.

*44. The emails called the photos racist and disgusting, and many identified Plaintiff by name as one of the students involved.*

Plaintiff denies this statement.

*45. These emails not only criticized the students involved, but some criticized the District for purportedly tolerating the behavior, and demanded the District take disciplinary action.*

Plaintiff refers to the referenced exhibits for their exact content.

*46. At 8:47 p.m., a female student emailed High School English Teacher Jillian Hoag to report an "uncomfortable" post circulating on social media, and attached the April 19 photo. (Ex. M.) This student indicated she felt "posts like these make students feel unsafe in their own school," and she asked her teacher to do something about it. (Id.)*

Plaintiff denies this statement, inasmuch as no reference is contained therein that supports it.

*47. At 8:52 p.m., a female student emailed Principal Davis complaining about the April 19 photo, referring to it as "really inappropriate." (Ex. N.) The student commented that it seemed to come "from a place of hate," that it made her "extremely uncomfortable … [to] share a school with people who joke about black American deaths," and that she hoped there is "some type of castigation."*

Plaintiff denies that this exhibit makes any reference to him.

*48. Principal Davis thanked the student for reporting the matter and indicated she would be following up on it the next morning. (Id.) She then forwarded the email to Superintendent Evans and advised it was the fourth student who had sent her the photo.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*49. At 9:04 p.m., another female student emailed Principal Davis and High School Guidance Counselor Christian Towsley to report the March 25 photo was circulating on Snapchat and "offending people from multiple schools." (Ex. O.) She attached a copy of the photo to her email. (Id.)*

Plaintiff refers the referenced exhibit as to its content and denies that it made any reference to him.

*50. Davis responded to the student's email, thanking her for the information. (Id.)*

Plaintiff refers the referenced exhibit as to its content  without admitting that it was sent.

*51. At 9:12 p.m., another female student emailed Principal Davis to complain about the "atrocious photo taken of two students by the name of Case Leroy and [Student A] (Ex. P.) Her email continued:*

> *"The photo shows Case lying on the ground with [Student A's] knee on his neck, with the caption "Cops got another." This photo is very obviously mocking the murder of George Floyd which is absolutely sickening to see by students of Livingston Manor. All POC students at LMCS are harmed and may even feel unsafe by the behavior demonstrated by these two students in the attached photo. I am a firm believer LMCS is, and should remain, a safe and compassionate place for all of its students and staff. With that being said, in order to keep that environment, it is in LMCS's best interest overall that the students in the attached photo are punished for absolutely disgusting, disturbing, and heartless actions. They will never understand what it was like for George Floyd's family and loved ones to lose their family member wrongfully at the hands of the law. I beg of you, on behalf of your POS students, and OC everywhere, take action toward this behavior. It is truly despicable. (Id.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*52. This student attached a copy of Plaintiff's Snapchat post with his original caption "Cops got another," along with the following caption that appears to have been added by someone who re-posted the photo on social media to criticize it: "Imagine making a ******* mockery of something very traumatizing that happened. You are both ******* disgusting."*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*53. Principal Davis thanked the student for informing her of this and indicated she would investigate in the morning.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*54. At 9:53 p.m., Superintendent Evans, along with eight other District administrators and employees, received an email from a Stand Against Racism in Education ("SARE") email address complaining about the photos that were circulating on social media; the email was signed by "Members of Stand Against Racism in Education." (Ex. Q.) The email reads,*

*It has come to our attention that there are students from the Livingston Manor Central School District Circulating pictures of themselves openly mocking the death of George Floyd who was a victim of police brutality. This is a disgusting display as the man who killed him is currently on trial. We have attached the pictures that we have seen. One of them appears to be taken on school property in a classroom. We have potential identifications of the students in the pictures: [Student A, Student B, Student D] and Case Leroy.*

*We are asking for your full attention to be given to this matter. It is clear form this display that the culture of racism spills from the home and into school life and you are obligated to address it.*

*We are asking for a swift and severe punishment. This display is outrageous and disgusting.*

*We are asking for a clear message from you all that this will not be tolerated by the school.*

*Signed,*
*Members of Stand Against Racism in Education. (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*55. SARE attached the April 19, 2021 photo and March 25, 2021 photo to its email. (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

56. *In response to SARE's email, Superintendent Evans indicated the school district administration was aware of the recent posts on social media and that the incidents would be thoroughly investigated and dealt with quickly and appropriately. (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

57. *The SARE group, in addition to writing directly to the administration, reposted Student A's photo with the caption: "Imagine saying that Livingston Manor has surpassed its dark history of being a Sundown Town with its own KKK chapter. Mind you, these kids are training for criminal justice. The further North you are in New York, the more Southern it gets." (Ex. V.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

58. *At 10:12 p.m., a female student emailed Principal Davis to report the photos circulating on social media, and attached a copy of Plaintiff's April 19 Snapchat post with the caption "Cops got another." (Ex. R.) In her email, this student wrote:*

*Although I never write emails concerning about what happens in the school especially when it comes to "drama" I think this is a complete different story. As you may know from the picture [M] and Case Leroy have made in my opinion a very inappropriate joke that should not be joked about and as someone who has faced discrimination and racism in her life I find this very disgusting and inappropriate because no matter the intention they still knew what they were doing and even had a smile on their face as they did it. As a person of color who had often felt like I had to watch what I said around certain people in the school because they might act hostile because of their opinions or views even though police brutality is not a political opinion/belief it is something that I feel strongly about and that many other people of color do as well and to see [M] and Case be able to smile and joke about it so freely hurts not only me but many other people as well especially since they will never feel or face the discrimination I have felt and might even face in the future is extremely disheartening to say the least even if they thought it was a "funny joke." The post had made me feel like it came from a place of hatred and makes me feel unsafe because at the end of the day these are people lives and should not be treated as a running joke. I genuinely hope you can see why this picture is extremely disrespectful to a person of color and I hope they have consequences to their actions. (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

59. *Principal Davis thanked the student for reporting the matter and indicated she would investigate in the morning. (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

60. *At 10:50 p.m., another female student emailed Principal Davis to report the photos circulating on social media; she attached a copy of Student A's April 19, 2021 Snapchat post and*

*the March 25, 2021 photo. (Ex. S.) She commented she felt "strongly disgusted and sick" that Plaintiff and Student A "thought to make fun and quote on quote joke about Gorge [sic] Floyds tragic death (shown in the pictures below)." (Id.) She considered the March 25 post to be making a similar joke. (Id.) Her email continued: "The topic of these two pictures have been flooding social media and I strongly believe that this is far form okay and that serious matter and actions are need [sic] to be taken." (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*61. Principal Davis informed the student she would investigate in the morning.*

Plaintiff refers the referenced exhibit as to its content.

*62. At 10:56 p.m., a male student emailed Principal Davis to complain about the social media posts. (Ex. T.) He also reported this "was not a one off event with Case and [Student A]," but that it "happens frequently" and that "so far this year [he] totaled close to 20 different incidents with this group making racist 'jokes' like this." (Id.) This student followed up with another email entitled "Proof" in which he attached the photos we was referring to.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*63. At 11:09 p.m., an alumni from a neighboring school district, Payton Powell, emailed Superintendent Evans and Principal Davis to report he came across "horrible and unacceptable pictures across many social media platforms" that "are very clearly mocking the death of George Floyd, and the Black Lives Matter Movement." (Ex. U.) He pointed out many people were aware of the social media posts. (Id.) The email continues:*

*As someone who is part of this community, and has dedicated time and effort in supporting this community, this type of behavior is absolutely unacceptable and quite frankly, disgusting. The people of color who attend schools in this county should feel accepted and safe. These kids have made it public that they are condoning police brutality and racism. Making it public, like they have, is absolutely appalling. (Id.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

64. In his email, Mr. Powell urged the District to take action: "Any child attending our schools in Sullivan County should feel safe, and accepted. Unfortunately, this is not the case for Livingston Manor from that I have seen. This type of behavior that is being swept under the rug, is hateful. I do hope that I shed some light on a very serious issue in schools around this country."

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

65. Superintendent Evans promptly responded to Mr. Powell's email. He thanked him for sharing his concerns and explained the District administration was aware of the posts, that they were investigating the matter, and that it would be handled promptly and appropriately. (Id.) He also responded: "Both the LMCS and RCS administrations take matters like this very seriously. The health, safety and wellbeing of all of our students is very important to us and racist behavior has no place in our schools."

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

66. At 11:44 p.m., Courtney Lambert, a parent of a 5th grade student in the District, emailed Superintendent Evans and Principal Davis to complain about "some disturbing pictures" she saw on social media. (Ex. V.) She commented the trial of Derick Chauvin was a sensitive matter that the whole world was watching and that the death of George Floyd should not be mocked, laughed at, or joked about. (Id.) She indicated she was concerned for her daughter's safety and urged the District to take serious action against the student.

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

67. Superintendent Evans responded to Ms. Lambert's email to explain the District was aware of the social media posts and conducting an investigation, and that such behavior "is completely unacceptable and inappropriate in any setting and will be addressed."

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*68. Also at 11:44 p.m., another community member and former District student, Jaspreet Gill, emailed Superintendent Evans and Principal Davis to complaint about the photos circulating social media, referring tot hem as "disgusting, racist behavior." (Ex. W.) She also recounted her past experiences with racism while attending the District as a student and urged the current administration to handle the matter differently:*

*When I was a student, no one was reprimanded for their racist insults and racial microaggressions toward me. I still remember it eight years later.*

*As leaders of LMCS, I ask you not to let this behavior continue and hold those students, if they do attend your high school, accountable. Do not let your students of color down as my teachers and peers did.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*69. In response to Ms. Gill's email, Principal Davis thanked her for the information and indicated the District was investigating the matter.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*70. At 12:15 a.m. on April 20, 2019, another community member, Balvina Garcia, emailed K-8 School Counselor Meagan Edwards to report Plaintiff's April 19 post and the fallout from it. Specifically, she attached a re-posted version of Plaintiff's April 19, 2021 post which included the following comment: "If you think shit like this is funny dead remove me bc I will fucking spit on you. This isn't cute. This isn't funny. This is terro[r]ism and it's not justified on any level. People like this make me sick. Fucking die. I hope you liter In her email, Ms. Garcia identified Plaintiff by name and commented his behavior was "unacceptable on every level that exists." (Id.) She further commented, "[T]his kind of mockery and behavior just promotes more and more hatred towards minorities and people of color. It's racism." Ms. Garcia asked the District to take action because such behavior*

"should not be tolerated and should be condemned." (*Id.*) Ms. Edwards forwarded this complaint to

Superintendent Evans and Principal Davis. *ally eat shit and DIE."*

    Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

    *71. In her email, Ms. Garcia identified Plaintiff by name and commented his behavior was*

*"unacceptable on every level that exists." (Id.) She further commented, "[T]his kind of mockery and*

*behavior just promotes more and more hatred towards minorities and people of color. It's racism."*

*Ms. Garcia asked the District to take action because such behavior "should not be tolerated and*

*should be condemned." (Id.) Ms. Edwards forwarded this complaint to Superintendent Evans and*

*Principal Davis.*

    Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

    *72. At 7:54 a.m., also on April 20, a female student emailed Principal Davis to complain*

*about Plaintiff's April 19 post, which she attached to her own email. (Ex. Y.) She indicated the photo*

*mocking George Floyd's death was very disturbing and that she did not "feel comfortable being*

*around classmates who happy make light of murder.*"

    Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

    *73. At 7:55 a.m., community member Hannah Tuso emailed Superintendent Evans, Principal*

*Davis, and High School Guidance Counselor Christian Towsley to complain about the photos which*

*were brought to her attention "and the attention of almost everyone in Sullivan and Orange*

*County." (Ex. Z.) She wrote:*

    *I'm sure you've all been made aware, and I appreciate your time in reading this so that I can*
*adequately express my deep level of concern and fear for our school.*

    *I know the history that our town has as a Sundown town. I am well aware of the legacy*
*Livingston Manor has left as being intolerant and discriminatory toward minorities. I really hope*
*that you all can find a way to act on this matter that facilitates growth and inclusivity: the people*
*of color that attend our school deserve better than to see the blatant disregard for their lives being*

*mocked on social media. Black people being killed by the police will never be a joke…*

*As someone with a dead father, these posts did affect me very deeply. The dead people that these boys are mocking had a family. They were human beings, with hopes and dreams and passions. They didn't get to achieve all they had planned, and now their unjust death is being joked about by your students.*

*I strongly urge you to make our counselors available for anyone that may need them after seeing these posts. I hope that appropriate action is taken to demonstrate our school's dedication to inclusivity and overcoming our history of discrimination.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*74. At 8:43 a.m., community member Grady Parks emailed Superintendent Evans to complain about the April 19 post. (Ex. AA.) In his email, Mr. Parks characterized the photo as a reenactment of "the scene in which George Floyd was brutally murdered by the police." (Id.) He described this behavior as "absolutely disgusting" and an active display of racism that may make people of color uncomfortable. (Id.) He called for "some sort of disciplinary action" against the students involved.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*75. In response to Mr. Grady's email, Superintendent Evans thanked him for sharing his thoughts and concerns and explained the District was aware of the social media posts and conducting an investigation. (Id.) Superintendent Evans also indicated: "As a school district we take these matters very seriously. These behaviors have no place in our school and as a district, we are taking steps to address this important issue throughout our school community."*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*76. At 12:32 p.m., community member Sophia Xiomara emailed Superintendent Evans and Principal Davis to report racist posts by District students; she identified Plaintiff by name. (Ex. BB.) In her email, Ms. Xiomara wrote: "Acting in a way that picks fun at a murder or another human*

*being is not a joke and cannot be brushed aside. Racist and hateful behavior cannot and will not be*

*tolerated in our community. Our youth are the future of this country and it is up to their teachers and*

*mentors to show them what is right and what is not."*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*77. Ms. Xiomara urged the District to "hold these students accountable and create policies*

*that no longer condone any racist/hateful behavior from tis students or community members."*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*78. Superintendent Evans received a similar email ten minutes later by Mykenzi Williams.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*79. Superintendent Evans responded to both emails to explain the District was aware of the*

*social media posts and conducting an investigation, and that the District would not tolerate racism*

*and will take steps to address that with the school community. (Ex. BB; Ex. CC.)*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*80. At 1:20 p.m., Dylan Parks emailed Superintendent John Evans, Principal Shirlee Davis,*

*K-8 Guidance Counselor Danielle Dalcero, High School Guidance Counselor Christian Towsley,*

*and District Clerk Jane Mann to complain about the March 25 photo and April 19 posts, which he*

*characterized as a reenactment of "the murder of George Floyd at the hands of Derek Chauvin."*

*(Ex. DD.) He described this behavior as "repulsive," "abhorrent," "nauseating," "unacceptable,"*

*and racist. (Id.) And he asked that the students be held accountable for their actions. He identified*

*Plaintiff by name and attached a re-posted version of Plaintiff's April 19 post. (Id.) Mr. Parks*

*indicated he had contacted the NAACP and was reaching out to the Director of Health and Human*

*Services for Sullivan County.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

81. *Superintendent Evans responded to Mr. Parks email, explaining the District was aware of the posts and conducting an investigation, and that all cases involving student discipline are confidential and cannot be discussed. (Id.) He assured Mr. Parks that the District was taking the matter very seriously and that racism would not be tolerated by the District.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

82. *At 1:40 p.m., community member Maritza Joya emailed Superintendent Evans and Principal Davis to advise she "came across disturbing photos of some [ ] students mocking/posing in a way that is very disrespectful to the BIPOC+ community." (Ex. EE.) Her email continued:*

*Acting in a way that picks fun at a murder over another human is not okay. This act is racist and hateful in every type of way. This can not [sic] be tolerated with in [sic] our community. You people as a district need to hold your students accountable for their actions. I truly hope that you will do right and hold them accountable for their behavior.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

83. *Superintendent Evans responded to Ms. Joya's email, explaining the District was aware of the posts and conducting an investigation, and that all cases involving student discipline are confidential and cannot be discussed. (Id.) He assured Ms. Joya that the District was taking the matter very seriously, that all students involved would be held accountable, and that racism would not be tolerated by the District.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

84. *At 9:52 p.m., Kelsie Nolan emailed Superintendent Evans and Principal Davis to report "abhorrent behavior" by District students. (Ex. FF.) She wrote:*

*I am ashamed and embarrassed to have any association with a town where people are allowed to behave in such a way as displayed online. If they are willing to post such egregious, horrifying, racist things online, I can only imagine what is said in private and even in school amongst friends. I have heard several reports of people saying these particular three kids have a pattern of saying antisemitic, homophobic, and obviously racist things….*

*These 3 students are displaying sociopathic tendencies mixed with classic small town racism veiled as ignorance. It is clear you all on the administrative level are not doing enough to prevent racism and the intense level of moronic behavior displayed here. If this is a repeated problem that is being handled by shunning kids reporting it, you are all failing in shaping the next generation. It is lazy and unethical to continue to allow these students to bully, harass, and demean other students, God help the word if these 3 even dream of working in law enforcement.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*85. Ms. Nolan called for three things: (1) swift severe action against these students, (2) an anti-racism education for all students and faculty; and (3) a plan as to how to properly punish and re-educate students who display racist, homophobic, or anti-Semitic rhetoric or action in the future.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*86. Superintendent Evans responded to Ms. Nolan's email, explaining the District was aware of the posts and conducting an investigation, and that all cases involving student discipline are confidential and cannot be discussed. (Id.) He assured Ms. Nolan that the District was taking the matter very seriously, that all students involved would be held accountable, and that racism would not be tolerated by the District.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*87. At 11:24 p.m., Catherine Skalda emailed Superintendent Evans, Principal Davis, and High School Guidance Counselor Christian Towsley to report "disturbing photos" that a group of students posted on social media. (Ex. GG.) She requested that the District address the matter appropriately.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*88. Superintendent Evans responded to Ms. Skalda's email, explaining the District was aware of the posts and conducting an investigation, and that all cases involving student discipline are confidential and cannot be discussed. (Id.) He assured Ms. Skalda that the District was taking*

*the matter very seriously, that all students involved would be held accountable, and that racism would not be tolerated by the District.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*89. On April 21, Elena Haskins emailed Superintendent Evans and Principal Davis to report "disturbing behavior" from District students, and identified Plaintiff by name. (Ex. HH.) She reported that images were circulating social media and she described them as "extremely disrespectful and mocking a devastating and racist murder."*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*90. Superintendent Evans responded to Ms. Haskin's email, explaining the District was aware of the posts and conducting an investigation, and that all cases involving student discipline are confidential and cannot be discussed. (Id.) He assured Ms. Haskin that the District was taking the matter very seriously, that all students involved would be held accountable, and that racism would not be tolerated by the District.*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*91. Jay Quintance, the President of SUNY Sullivan community college, also emailed Superintendent Evans to report pictures on social media of District students reenacting the George Floyd incident, and identified Plaintiff by name. (Ex. II.) Mr. Quintance inquired as to whether any of the students involved had visited his campus and what consequences they would be facing for their "disgusting display of hate."*

Plaintiff refers the referenced exhibit as to its content, without admitting that it was sent.

*92. On the evening of April 19, Superintendent Evans and Principal Davis discussed the emails they had received, the comments and threats posted on social media, and safety concerns in their school.*

Plaintiff has no basis upon which to admit or deny this statement, as he was not present.

*93. Accordingly, they requested the students involved not come to school the following day, for their safety, and bring them in to be interviewed in connection with the investigation.*

Undisputed, except for the word "accordingly."

*94. The photos were widely disseminated throughout the community, and a major topic of discussion throughout the school day, including during class time. Students were talking about the photos both during and in between classes.*

Plaintiff denies the terms "widely" and "major" in this statement and that this statement is supported by the references therein.

*95. High school staff and teachers were engaging in discussions with students in their classrooms about the social media posts, interrupting their regular periods of instruction.*

Plaintiff denies that the referenced discussions interrupted their regular periods of instruction.

*96. District administrators were approached by multiple staff members who requested to know how the District planned to respond to the unrest created by the photos.*

Plaintiff has no personal knowledge upon which to base his admission or denial of this statement.

*97. District administrators also became aware of a planned student protest, for which students were planning to livestream during the school day and on school grounds to express their disagreement with the images on social media and the connotations that came with it.*

Plaintiff has no personal knowledge upon which to base his admission or denial of this statement.

*98. In response to the disruption, as well as the concerns expressed to District administrators and staff, the administrative team planned and coordinated an assembly for students in grades 7-12*

*in the gymnasium of the District to address the photographs and the disruption that resulted from them. It was attended by all 7-12 grade students, teachers, guidance counselors, and building administrators who were in the building that day.*

Plaintiff admits that an assembly was held and was attended by all 7-12 grade students, teachers, guidance counselors, and building administrators who were in the building that day, but otherwise denies the remainder of this statement.

*99. Superintendent Evans purposefully scheduled the assembly at the same time as the planned student protest to avoid the disruption he anticipated it would create, try to prevent students from leaving school grounds, which created various security and safety concerns.*

Plaintiff has no basis upon which to know the operation of Superintendent Evans' mind.

*100. Although District officials believed the assembly was necessary under the circumstances, it still interrupted approximately 200 students' class schedules and interfered with Middle School and High School teachers' ability to provide instruction to their students.*

Plaintiff denies this statement.

*101. During the assembly, Superintendent Evans informed students in attendance that the District was aware of the posts, was taking the matter seriously and working to address racism, that an investigation was occurring, and that student discipline is a confidential matter that cannot be discussed.*

Plaintiff has no way of knowing what Superintendent Evans said at the assembly and therefor denies this statement.

*102. In fact, no confidential student information regarding Plaintiff or any other students was discussed during the assembly.*

Plaintiff has no way of knowing what Superintendent Evans said at the assembly and therefor denies this statement.

*103. District administrators also informed students that school counselors would remain available for anyone who needed counseling in relation to the circulation of the photos.*

Plaintiff has no way of knowing what Superintendent Evans said at the assembly and therefor denies this statement.

*104. After the assembly, some students held a demonstration in the gymnasium, during which they knelt for nine minutes to honor George Floyd. Mr. Towsley remained in the gymnasium to supervise.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

*105. After the demonstration ended, the remaining students relocated to the school's health room where they engaged in a discussion about the photos, racism, insensitivity, and George Floyd. As the demonstration required student supervision, Mr. Towsley remained with the students to supervise it. This also caused a disruption to these students' schedules.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination. Plaintiff denies that this caused a disruption of the students' schedules.

*106. State trooper and law enforcement officers from the Sheriff's Department remained on school grounds throughout the day, which prompted inquiries from concerned parents.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination. Defendant has no way of knowing what allegedly prompted inquiries from concerned parents.

107. *Also on April 20, Superintendent Evans released an official statement to the school community, which he posted on the District website. In this statement, he indicated the District was aware some students posted inappropriate photos and comments on social media, and that the District takes such matters very seriously. He explained the District was investigating the matter but all cases involving student discipline are confidential and cannot be discussed. Evans also apologized on behalf of the District for the student behavior and indicated that "racism cannot and will not be tolerated" by the District.*

Plaintiff refers to the published statement for its content. Plaintiff does not contest that Superintendent Evans stated that, "racism cannot and will not be tolerated."

108. *By April 21, 2021, a News12 story broke about the photos, which prompted various media requests to the District. The News12 story quoted the Superintendent's statement to the school community from the day before.*

Undisputed, except as to what "prompted various media requests to the district."

109. *Evans never spoke directly to News12, and does not know how they learned of the photos or his statement to the school community, although the social media posts were widely circulated.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

110. *Despite receiving multiple interview requests, Superintendent Evans did not participate in any interviews. Rather, he advised inquiring news media outlets that because the matter was under investigation the District would have no further comment to protect student confidentiality and due process.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

*111. A reporter for a local news station, Blaise Gomez, posted a story on Instagram in which she re-posed the photos but blurred out the students faces. (Ex. G at p. 47.) However, viewers commenting on the Instagram post identified Student A and Plaintiff by name.*

The first sentence is undisputed. The second sentence is not supported by the cited reference.

*112. Plaintiff does not know how any news media outlets learned of the photos or obtained them.*

Undisputed

*113. In May 2021, the District held two days of training regarding implicit bias.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

*114. On April 20, 2021, Superintendent Evans and Principal Davis began an investigation.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

*115. They interviewed several students (in the presence of their parents/guardians), including Leroy, Student A, and Student B, who all claimed it was just a joke and they had no intention of being racist or offending anyone.*

Undisputed

*116. Plaintiff, along with his father Gordon Leroy, met with Superintendent Evans and Principal Davis in Superintendent Evans' office.*

Undisputed

*117. During the interview, Plaintiff admitted to posting the April 19 photo as a joke.*

Undisputed as to the photograph which bore only the caption, "Cops got another" and nothing else.

*118. Superintendent Evans showed Plaintiff the March 25 and questioned him about it; Plaintiff admitted he took the photo.*

Undisputed

*119. At the end of Plaintiff's interview, Superintendent Evans explained the issue was very serious, viewed as racist, and caused a significant disruption throughout the school district. He also indicated Plaintiff would receive a letter suspending him for five days and possibly have to undergo a Superintendent's hearing.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination. Undisputed that plaintiff was suspended for five days.

*120. Superintendent Evans and Principal Davis also interviewed Student A, with his legal guardian present. Student A told Superintendent Evans and Principal Davis that he added the BLM Logo.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

121. *Student B commented during his interview that Student A posted the photo with a BLM logo and that he and Plaintiff re-posted the photo afterwards.*

Plaintiff cannot respond to this statement, as he was not present at the interview and no transcript thereof exists. In addition, Exhibit MM page 30, cited in support of this statement, does not exist Plaintiff denies that he reposted the photo bearing the BLM logo.

*122. On April 21, 2021, Principal Davis suspended Plaintiff from school for five days, after conferring with Superintendent Evans.*

Undisputed that plaintiff was suspended for five days. Plaintiff neither admits or denies this statement that Davis suspended plaintiff after conferring with Evans and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

123. *On April 21, the District also hired attorney Bethany Centrone to investigate the matter.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination.

124. *As part of her investigation, Ms. Centrone interviewed Superintendent Evans. He shared that addressing the posts had been all consuming and he had to work to ward off a student protest against the posts.*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination. In addition, the term "all consuming" is not quantified.

125. *Ms. Centrone interviewed students as part of her investigation. (Ex. MM at pp. 5-6.) One of the students shared that since the posts were uploaded "everyone has been talking about it." (Ex. MM at p. 5.) She indicated that during study hall on April 20, 2021, students in class were discussing the posts and the student involved "so much so that it was interfering with her ability to do work."*

Plaintiff neither admits or denies this statement and defers to what defendant's witnesses testify to at trial, subject to cross-examination. In addition, the statement contains hearsay.

126. *On April 23, Ms. Centrone issued a report that concluded there was sufficient evidence to determine Plaintiff engaged in behaviors that violated the Code of Conduct.*

Undisputed, without admitting that Ms. Centrone's conclusion was justified.

*127. She determined the following Code of Conduct provisions were implicated:*

*Article Vl(A)(5) - Engaging in any willful act which disrupts the normal operation of the school community*

*Article IV(C)(3) - Display or use of personal electronic devices ... in a manner that is in violation of district policy*

*Article IV(E)(4) - Discrimination, which includes using race, color ... to deny rights, equitable treatment or access to facilities available to others*

*Article IV(E)(5) - Harassment, which includes a sufficiently severe action .. . directed at an identifiable individual or group which [is] intended to be, or which a reasonable person would perceive as ridiculing or demeaning. Harassment is also the creation of a hostile environment.*

*Article IV(H) - Engage in off-campus misconduct that interferes with, or can reasonably be expected to substantially disrupt the educational process in the school or at a school function.*

Plaintiff refers to the cited exhibit for its content.

*128. Ms. Centrone's report also sets forth her investigatory findings. She found Plaintiff admitted to being involved in the wrongful conduct and, at a minimum, had asked Student B to send him the photo so he could post it. She also noted that Plaintiff admitted to taking and posting the March 25 photo without Student D or Student E's consent (the students in the photo)*

Plaintiff refers to the cited exhibit for its content. Plaintiff denies that he took and posted the March 25 photo without the consent of the students pictured therein and asserts that Superintendent Evans admitted at the argument of the motion for a preliminary injunction that the March 25 photo played no part in plaintiff's suspension, which the court found.

*129. Ms. Centrone's investigatory findings continued: "It is clear from the reaction of the community to the posts that a reasonable person would perceive the post as ridiculing or demeaning. While the students stated that they intended the posts to be funny or a joke, by their nature, the posts are targeted at African Americans and are discriminatory."*

Plaintiff refers to the cited exhibit for its content.

*130. Further, Ms. Centrone found Superintendent Evans' description of the disruption he had to address following the photos being posted "sufficiently demonstrates that the educational process has been substantially disrupted since April 19, 2021." She also concluded that "additional disruption was caused to student Student D and Student E who have reported harassment since they were identified in the posted photos."*

Plaintiff refers to the cited exhibit for its content and asserts that this statement is conclusory and based on unsupported hearsay.

*131. Ms. Centrone concluded that her "investigation revealed sufficient evidence to determine the students engaged in behaviors that violated the District's Code of Conduct."*

Plaintiff refers to the cited exhibit for its content.

*132. Accordingly, she recommended that the students be referred to a Superintendent's hearing to determine if additional discipline was warranted.*

Plaintiff refers to the cited exhibit for its content.

*133. Based on the recommendation from Ms. Centrone, Superintendent Evans charged Plaintiff with Code of Conduct violations for "posting racially offensive material on social media on or about March 25, 2021 and April 19, 2021 which have resulted in a substantial disruption to the school environment."*

Plaintiff refers to the cited exhibit for its content.

*134 These charges were consistent with those Ms. Centrone recommended in her investigation report.*

Plaintiff refers to the cited exhibits for their content.

*135. Superintendent Evans scheduled a Superintendent's hearing for April 27, 2021 to consider a suspension beyond five school days, and designated Kate Reid to serve as a Hearing*

*Officer.*

Undisputed

*136. The Superintendent hearing took place on April 27, 2021.*

Undisputed

*137. Plaintiff testified voluntarily and under oath during the hearing.*

Undisputed

*138. Plaintiff admitted he was in the April 19 photo, and that he posted it on social media with the caption "Cops got another."*

Undisputed, to the extent that it refers to the photo that bore that caption and nothing else.

*139. Plaintiff also admitted he took the March 25 photo during his first period English class.*

Undisputed that plaintiff took the photo, but in the cited support for this statement he testified that he did not remember whether it was during or after class.

*140. When asked by the hearing officer whether it has been explained to him why the statement might have been insensitive and may have been perceived that way, Plaintiff responded "yea."*

Plaintiff refers to the cited exhibit for its content.

*141. Superintendent Evans also testified at the Superintendent hearing. When asked about disruption, he testified he and other District employees received a lot of emails and communications from staff, students, community members, and people outside of the community.*

Plaintiff refers to the cited exhibit for its content.

*142. During the Superintendent's hearing, the Hearing Officer found Plaintiff guilty of violating Article VI(A)(5) of the Code of Conduct which prohibits engaging in any willful act which disrupts the normal operation of the school community ("Charge 1"). (Ex. I at p. 44-45.) She opined*

*that when Plaintiff posted the April 19, 2021 photo, he should have known, based on what was going on in the word and the community at large, that his post was insensitive and would yield the type of reaction it caused.*

Plaintiff refers to the cited exhibit for its content.

*143. Hearing Officer Reid also sustained the District's fifth, and final, charge, finding that Plaintiff violated Article IV(H) by engaging in off-campus misconduct that interfered with, or can reasonably be expected to substantially disrupt, the educational process in the school or at a school function ("Charge 5"). She found that given Plaintiff's age and maturity level, he should have realized his behavior would cause a real problem in the school community and be very disruptive.*

Plaintiff refers to the cited exhibit for its content.

*144. On April 28, 2021, Hearing Officer Reid issued a Findings of Fact and Recommendation, in which she memorialized her findings from the Superintendent's hearing regarding the charges, and recommended Plaintiff be suspended through May 21 with the option to return early on May 10 if he signs a student contract.*

Plaintiff refers to the cited exhibit for its content.

*145. Hearing Officer Reid considered the disruption that both photographs had to the school environment, which includes the photograph that Plaintiff took in the school building during school hours, on March 25.*

Plaintiff refers to the cited exhibit for its content and further asserts that Superintendent Evans admitted at the argument of the motion for a preliminary injunction that it played no part in plaintiff's suspension, which the court found.

*146. In her Findings of Fact and Recommendation, the Hearing Officer concluded:*

*The Superintendent testified in great detail regarding the disruption to the school*

*environment created by both of the pictures posted by Case on social media. The posts drew significant attention from the news media (both television and newspaper) and the community that necessitated considerable response from the Superintendent and the Building Principal. The Superintendent needed to intervene because students at the Middle/High School planned a demonstration to protest the posts, which they uniformly perceived as racist. The postings necessitated that the Superintendent schedule an assembly for students in grades 7-12 to explain that the District was taking the matter seriously and working to address racism in the District. All told, the posts resulted in substantial interruptions in instruction and required substantial attention and intervention by multiple school administrators.*

Plaintiff refers to the cited exhibit for its content.

*147. Based on those findings, the Hearing Officer found the District sustained its burden regarding Charges 1 and 5 by providing competent and substantial evidence demonstrating that two Code violations.*

Plaintiff refers to the cited exhibit for its content.

*148. She determined:*

*Any reasonable person would construe the content of both photos as racially insensitive, particularly in light of the close proximity between the posting of the photos and the Derek Chauvin trial. Case's professed ignorance of the trial and the connotations of the photo do not excuse his actions. Any reasonable student of Case's age and maturity should have been aware that the photos would be construed as a racially insensitive mockery of the murder of George Floyd. Cause either knew or should have known that posting this picture would create a substantial disruption of the school environment.*

Plaintiff refers to the cited exhibit for its content.

*149. The Hearing Officer also concluded that Superintendent Evan's testimony "established Plaintiff's actions resulted in multiple days of disruption to the school district; considerable interruptions in instruction; [and] great distress on the part of multiple students and community members."*

Plaintiff refers to the cited exhibit for its content.

*150. The Hearing Officer further determined Plaintiff's actions "resulted in allegations that the District, itself, was condoning racism" and that "[t]hese allegations have harmed the District's*

*relationship with its community and will need to continue to be addressed by the District's administration, long after the conclusion of this hearing process."*

Plaintiff refers to the cited exhibit for its content.

*151. After reviewing the Hearing Officer's recommendations and the full hearing record, Superintendent Evans accepted the Hearing Officer's findings, and suspended Plaintiff for a period of instruction through May 21, 2021, and from non-academic, extracurricular activities, for the remainder of the 2020-2021 school year, including the graduation ceremony.*

Undisputed, except that Superintendent Evans did not fully accept the hearing officer's recommendation, which was to suspend plaintiff for a lesser time period.

*152. Superintendent Evans permitted Plaintiff to return from suspension on May 10, 2021, after he signed a contract of conduct.*

Undisputed that plaintiff was allowed to return to class, but his suspension from extra-curricular activities was not lifted.

*153. Plaintiff appealed Evans' decision to the Board, which affirmed it.*

Undisputed

154. *The next step would have been to appeal the Board's decision to the Commissioner of Education, but Plaintiff never took this step; instead he filed the lawsuit.*

Plaintiff denies that he was required to appeal the Board's decision to the Commissioner of Education before commencing this action.

*155. Plaintiff attended his high school graduation, after obtaining injunctive relief from Judge Julian Schreibman of the New York State Supreme Court, County of Sullivan.*

Undisputed

Dated: May 19, 2023

_____
JEROME T. DORFMAN
Attorney for Plaintiff
8 Breezy Hill Road
Parksville, NY 12768
(845) 747-9403