```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER : CIVIL TERM
- - - - - - - - - - - - - - - - - - - - -x
CASE LeROY,                                  :    Index No.
                                                  E-2021-968
                    Plaintiff,               :

         -against-                           :

LIVINGSTON MANOR CENTRAL SCHOOL                   BENCH
DISTRICT and JOHN P. EVANS, in his           :    DECISION
Capacity as Superintendent of
Schools of Livingston Manor
Central School District,
                    Defendants.              :

- - - - - - - - - - - - - - - - - - - - -x
                                   Ulster County Courthouse
                                   285 Wall Street
                                   Kingston, NY 12401
                                   June 25, 2021
                                   VIA TEAMS
```

B e f o r e:

    HON. JULIAN D. SCHREIBMAN, Supreme Court Justice

A p p e a r a n c e s:

    LAW OFFICES of JEROME T. DORFMAN
        Attorney for Plaintiff
        8 Breezy Hill Road
        Parksville, NY 12768
    By:   JEROME T. DORFMAN, ESQ.

    HOGAN, SARZYNSKI, LYNCH, DEWIND & GREGORY, LLP
        Attorneys for Defendants
        520 Columbia Drive
        Johnson City, NY 13790-3305
    By:   CAMERON B. DANIELS, ESQ., of Counsel

    JOHN P. EVANS, Superintendent

MARIA GILES, SENIOR COURT REPORTER

```
 1              THE COURT:  We will go back on the record in the
 2     matter of LeRoy against Livingston Manor Central School
 3     District.
 4              The Court has conducted oral argument over the
 5     past hour-and-a-half regarding the Plaintiff's request for
 6     a Preliminary Injunction prohibiting the School District
 7     from barring the Plaintiff from participating in
 8     graduation ceremonies scheduled for this weekend.
 9              The injunction is granted for the following
10     reasons.  In the first instance, the Court clearly would
11     prefer to have had the opportunity to provide a written
12     decision to digest more deeply the parties' submissions,
13     answers to the Court's questions and the applicable law,
14     particularly in light of the fact that the United States
15     Supreme Court issued extremely relevant precedent just a
16     few days ago.  However, by virtue of the nature of the
17     relief involved here, there is really no alternative but
18     to give you a decision on the record and to explain it as
19     best as I can in this more informal setting.
20              In determining whether or not the Plaintiff is
21     entitled to a Preliminary Injunction, the Court is
22     required to consider three factors:  The Plaintiff's
23     likelihood of success on the merits; the existence of
24     potentially irreparable harm in the absence of an
25     injunction; and a balance of the equities.
```

        Upon all the evidence presented, the Court believes that all three of these favor the Plaintiff's position. First, with respect to a likelihood of success on the merit. The Court agrees that the first photo in the classroom context is not really relevant to the determination here. It is being used, not in bad faith, but being used, in some sense, to attempt to bootstrap the rules applicable to in-school conduct to what is really happening here which is a regulation of out-of-school conduct. Neither of the other students in that photo were disciplined. The photo happened in a context of an actual classroom setting that teaches such conduct. Essentially, it's being raised as a sort of prior bad act to analogize to a criminal or civil case. There is no reason to believe that that was intended to be part of or otherwise was a basis for a punishment here which deals with the April 19th incident.

        With respect to the April 19th photo, and here again I think we can only deal with the photo actually communicated by the plaintiff, not that communicated by any other person. Whether that speech was intended to be political is disputed by the parties. That dispute, however, is somewhat less relevant to the extent that the School District takes the position that it is essentially punishing the political content of that speech.

1      I want to make it clear that this Court is not
2 saying that antiracist speech and racist speech are on the
3 same footing. They are not. Indeed, our public schools
4 have an obligation to teach students antiracism, to be
5 antiracist and to engage in antiracist conduct. And they
6 have an equal duty to proscribe racist acts, to condemn
7 racism, and to punish racist acts, including potentially
8 racist remarks and speech that occurred in the school. At
9 the same time, as the Supreme Court has recently
10 articulated in the Mahanoy case, schools are also
11 nurseries of democracy, and in that regard are expected to
12 have a wide bound of tolerance for political speech.
13 Using that opportunity to educate kids and in furtherance
14 of that necessarily to allow in some instances to rise and
15 fall and understand the consequences of that speech in
16 terms of how it is received. In this matter it is clear
17 to the Court that, if the School District is correct in
18 its interpretation of the photographs, then it is
19 punishing protected First Amendment speech. And there is
20 no question that the Plaintiff here has a First Amendment
21 right to engage in speech of that nature.
22      That does not mean that the School District
23 cannot punish certain speech that would otherwise be
24 protected. Indeed, that is exactly what the cases that we
25 have been discussing wrestle with, and there is no

question as reflected in the Supreme Court's Mahanoy decision that it is a very difficult case, it's a very difficult matter to wrestle with, hence the reason that that decision gives relatively little guidance to other Courts as to how to implement it. Nonetheless, one of the factors significant here is the fact that there is no nexus whatsoever to the school in this act of speech. It's not directed at the school. It doesn't mention the school. It didn't happen at the school. It doesn't relate to any events that were taking place at the school. Indeed, the only reason that the school became involved was that it received communications from persons who believe that by virtue of this Plaintiff's status as a student at the school the school should be, in some sense, responsible for regulating his behavior. But it is precisely that circumstance that the Mahanoy decision urges caution. A school does not stand in the place of parents when it comes to regulating out-of-court conduct or speech, and the fact that persons ask the school to do so does not empower the school to do so. Rather, the school's role in regulating out-of-court speech is, as the Supreme Court has now emphasized, extremely limited.

In this matter, moreover, there was very ambiguous proof of actual racial animus by the Plaintiff. I don't disagree with the school's conclusion that the

photograph is disturbingly similar to that of Officer Chauvin and George Floyd. Nonetheless, the intent and purpose of posting that photograph is contested by the plaintiff. And the proof introduced by the school on that subject is ambiguous, particularly in light of the recently discovered evidence that the Plaintiff actually wrote an essay sympathetic to George Floyd, taking the position that the police actions with respect to Mr. Floyd were excessive and indeed criminal and should be sanctioned with imprisonment.

And finally, staying on the prong of likelihood of success, the Court expects that the decision of the Supreme Court in Mahanoy will govern this case. In looking at the facts of Mahanoy, which involved speech directed at the school; vulgar speech directed at the school; directed at personnel of the school; directed at activities and institutions at the school and nonetheless found them to be beyond reach of the school's punishing authority, found them to be protected speech even though it consisted essentially simply of a vulgarity directed at the school.

The Court believes that it is likely that Mahanoy governs this case and will probably compel a ruling against the School District in this case. I do not, by saying that, mean to imply that I am prejudging

the ultimate case.  But I am required to assess the likelihood of success and it appears to me that Mahanoy probably governs this case and in a way that is favorable to the Plaintiff.  Accordingly, I find that the plaintiff is likely to succeed on the underlying lawsuit.

With respect to irreparable harm.  There is clearly irreparable harm to the Plaintiff if the injunction is not granted.  Graduation from high school is literally a once-in-a-lifetime event.  At the same time, there is essentially no harm to the School District if the injunction is granted.  The Plaintiff has already been punished extensively.  He was unable to attend his prom. He was unable to participate in sports or extracurriculars and he was removed from the school for a period of time. Moreover, if a higher court were ultimately to find my ruling today here to be an error there would be no diminution of the School District's interest in deterring this kind of conduct in the future simply because one portion of its punishment was unable to be enforced. Therefore, I find that there would be irreparable harm to the Plaintiff if the injunction were not granted during the pendency of this action.

Finally, the Court must consider the balance of equity in this case.  Again, in a broad sense, the School District has an interest in fostering and inculcating a

1  community free of racism, free of racially based discord
2  and animus. However, as I have indicated under the
3  likelihood of success, it appears that the school
4  overreached in its application of those principles to this
5  particular case. The record reflects in the
6  recommendations by Attorney Kate Reid that although this
7  student is near the end of his senior year of high school
8  he has no history whatsoever of prior school-based
9  discipline. This is essentially a first offense. In
10 addition, the school received a number of letters
11 supporting the Plaintiff's character from the community
12 which, apparently, are not controverted. As noted, there
13 is, in addition to that, substantial ambiguity about the
14 proof in this matter in terms of the actual mechanisms by
15 which the speech was communicated. Challenging or not, in
16 cases involving social media, a School District, I
17 believe, is required to be sufficiently fluent in those
18 platforms and those accounts, to be able to describe
19 exactly how they are disseminated, by whom and, to the
20 extent there are modifications to images, how they are
21 done.
22            In this case, while there is no detailed proof
23 on the matter, the Court shares Plaintiff counsel's view
24 that to the extent there was disruption it was almost
25 certainly caused, not by this plaintiff's conduct, but by

1   the other student who took the position of Officer Chauvin
2   in the photo and added the racially offensive commentary
3   to the photo.  Overall, in the context of the balancing of
4   equity, even if this is conduct that may be regulated by
5   the school, whether the punishments meted out, in
6   particular denying access to graduation as to which there
7   is no suggestion that he was anywhere -- anything but
8   entitled to attend on the basis of his coursework and
9   record at the school, strikes the Court as excessive,
10  potentially grossly excessive relative to the conduct the
11  School District seeks to proscribe.
12          Accordingly, the Court believes that equities
13  balance in favor of allowing the Plaintiff to attend the
14  graduation.  That is the ruling of the Court.  If either
15  counsel wishes to place anything on the record in regard
16  to the ruling I will give you the opportunity to do that
17  now.
18          MR. DORFMAN:  I just wish to thank the Court for
19  your decision.
20          THE COURT:  Understood, Mr. Dorfman.
21          MR. DANIELS:  Yes, thank you, your Honor.  The
22  District would --
23          THE COURT:  -- respectfully disagree --
24          MR. DANIELS:  -- and object to some of the
25  determinations which we can as long as I can just say we

object I don't think we need to put anything else on the record. I did have a procedural question, your Honor. The Order to Show Cause directed that opposition papers be filed by today. I did not interpret that to mean an answer to the Plaintiff's complaint.

THE COURT: No, that is correct, only to the Preliminary Injunction Order to Show Cause. You have whatever time limit would normally be applicable in the matter. Perhaps, in light of my determination here, maybe there is a basis to reach some kind of accommodation rather than engage in litigation over the course of the summer. That's up to the parties.

MR. DANIELS: Understood.

THE COURT: I appreciate again the very thorough efforts to litigate this on short notice and in a changing legal context I appreciate everyone's input, including Mr. Evans' assistance in elucidating some of the conduct. Thank you all and be safe out there.

\*   \*   \*

Certified to be a true and accurate transcript.

*Maria Giles*
Maria Giles, Sr. Court Reporter